UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PETRO GRYTSYK,

        Plaintiff,

    - against -

P.O. ANTHONY MORALES, Shield No. 5056,
LIEUTENANT SUJAT KHAN, SERGEANT MATTHEW
BERGEN, Shield No. 3460,
SERGEANT JEFFREY MURPHY, Shield No. 3634,
SERGEANT DOUGLAS SCHACK, Shield No. 3250,
P.O. CHRISTOPHER TANSEY, Shield No. 2825,
P.O. CHRISTOPHER WILLIAMS, Shield No. 3659,
CAPTAIN O'HARA, P.O. DAVID LACHMENAR, Shield
No. 21671, P.O. JUAN DESALTO, Shield No. 15080,
P.O. LOUIS SCIALABBA, Shield No. 8087, SERGEANT
BRENDAN McGURRAN, Shield No. 3723,
P.O. RICARDO DiCANDIA, Shield No. 18015,
P.O. MATHIMOHMAN MOHANDES, Shield No. 11894,
P.O. JOSE ESPINAL, Shield No. 20735,
SERGEANT VINCENT FORLENZA, Shield No. 3906
P.O. RAHMAN, P.O. GAO, P.O. HENRY, TIMES SQUARE
DISTRICT MANAGEMENT ASSOCIATION, INC. a/k/a
TIMES SQUARE ALLIANCE and THE CITY OF NEW YORK,

        Defendants.
------------------------------------------------------------------------X

19 CV 3470 (DAB)

AMENDED
COMPLAINT AND
JURY TRIAL DEMAND

    Plaintiff, PETER GRYTSYK, by his attorney, ALAN D. LEVINE, ESQ., complaining of the defendants herein, respectfully alleges as follows:

## JURISDICTION

1.     This is a civil action, seeking compensatory damages, punitive damages and attorney's fees.

2.     This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the first, fourth, fifth and fourteenth amendments to the Constitution of the United States.

3.     Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343.

## VENUE

4. Venue is properly alleged in the Southern District of New York in that the acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

5. Plaintiff hereby demands a trial by jury of all issues in this action that are so triable.

## PARTIES

6. At all times relevant hereto, plaintiff, PETRO GRYTSYK, was and is a natural person, resident in the County of Queens, City and State of New York.

7. At all times relevant hereto, defendant P.O. ANTHONY MORALES, Shield No. 5056 (hereinafter "MORALES") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

8. At all times relevant hereto, defendant LIEUTENANT SUJAT KHAN (hereinafter "KHAN") was and is a natural person, employed as a lieutenant by the Police Department of defendant CITY OF NEW YORK.

9. At all times relevant hereto, defendant SERGEANT MATTHEW BERGEN, Shield No. 3460 (hereinafter "BERGEN") was and is a natural person, employed as a sergeant by the Police Department of defendant CITY OF NEW YORK.

10. At all times relevant hereto, defendant SERGEANT JEFFREY MURPHY, Shield No. 3634 (hereinafter "MURPHY") was and is a natural person, employed as a sergeant by the Police Department of defendant CITY OF NEW YORK.

11. At all times relevant hereto, defendant SERGEANT DOUGLAS SCHACK, Shield No. 3250 (hereinafter "SCHACK") was and is a natural person, employed as a sergeant by the Police Department of defendant CITY OF NEW YORK.

12. At all times relevant hereto, defendant P.O. CHRISTOPHER TANSEY, Shield No. 2825 (hereinafter "TANSEY") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

13. At all times relevant hereto, defendant P.O. CHRISTOPHER WILLIAMS, Shield No. 3659 (hereinafter "WILLIAMS") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

14. At all times relevant hereto, defendant CAPTAIN O'HARA (hereinafter "O'HARA") was and is a natural person, employed as a captain by the Police Department of defendant CITY OF NEW YORK.

15. At all times relevant hereto, defendant P.O. DAVID LACHMENAR, Shield No. 21671 (hereinafter "LACHMENAR") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

16. At all times relevant hereto, defendant P.O. JUAN DESALTO, Shield No. 15080 (hereinafter "DESALTO") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

17. At all times relevant hereto, defendant P.O. LOUIS SCIALABBA, Shield No. 8087 (hereinafter "SCIALABBA") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

18. At all times relevant hereto, defendant SERGEANT BRENDAN McGURRAN, Shield No. 3723 (hereinafter "McGURRAN") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

19. At all times relevant hereto, defendant P.O. RICARDO DiCANDIA, Shield No. 18015 (hereinafter "DiCANDIA") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

20. At all times relevant hereto, defendant P.O. MATHIMOHMAN MOHANDES, Shield No. 11894 (hereinafter "MOHANDES") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

21. At all times relevant hereto, defendant P.O. JOSE ESPINAL, Shield No. 20735 (hereinafter "ESPINAL") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

22. At all times relevant hereto, defendant SERGEANT VINCENT FORLENZA, Shield No. 3906 (hereinafter "FORLENZA") was and is a natural person, employed as a sergeant by the Police Department of defendant CITY OF NEW YORK.

23. At all times relevant hereto, defendant P.O. RAHMAN (hereinafter "RAHMAN") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

24. At all times relevant hereto, defendant P.O. GAO (hereinafter "GAO") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

25. At all times relevant hereto, defendant P.O. HENRY (hereinafter "HENRY") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

26. At all times relevant hereto, defendant TIMES SQUARE DISTRICT MANAGEMENT ASSOCIATION, INC. a/k/a TIMES SQUARE ALLIANCE (hereinafter

"TIMES SQUARE ALLIANCE") was and is a not-for-profit organization receiving the majority of its income from a real estate special assessment levied by defendant CITY OF NEW YORK on properties located in the Times Square Business Improvement District.

27. At all times relevant hereto, defendant CITY OF NEW YORK was and is a municipal corporation, organized and existing pursuant to the laws of the State of New York.

28. The individual defendants, including the corporate defendant, are sued in their individual capacities.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST THE INDIVIDUAL DEFENDANTS
### (42 U.S.C. §1983)

29. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "28" hereinabove as if more fully set forth at length herein.

30. Since in or about 2010, plaintiff has lawfully sold artworks, that he has created, on the sidewalk in front of 701 Seventh Avenue, between West 47th and West 48th Streets, in the County, City and State of New York.

31. Plaintiff is permitted to display and sell his art on the street at the aforementioned location without having to obtain a general vending license from defendant CITY OF NEW YORK.

32. Plaintiff's right to display and sell his art without obtaining a general vending license is guaranteed to him by a consent decree, founded upon the first amendment to the Constitution of the United States, which was entered into by defendant CITY OF NEW YORK in 1997.

33. The provisions of the aforementioned consent decree as they apply to the Police Department of defendant CITY OF NEW YORK are embodied in the Police Department's Operations Order No. 32, issued on June 27, 2002.

34. Pursuant to the aforementioned consent decree and Operations Order, plaintiff may display and offer his art for sale at the aforementioned location at any time except at those times when both food and general vendors are not permitted to sell their wares.

35. Nevertheless, despite the existence of the aforementioned consent decree and NYPD Operations Order, plaintiff was issued a total of twenty summonses for illegal vending between June 15, 2008 and October 16, 2015.

36. Five of the aforementioned summonses were returnable at the New York City Environmental Control Board (hereinafter "ECB").

37. The other fifteen summonses were returnable in Criminal Court of the City of New York.

38. All of the aforementioned twenty summonses were dismissed.

39. The events underlying this lawsuit commenced on April 18, 2016, when plaintiff was arrested.

40. The events leading up to plaintiff's arrest commenced when plaintiff's wife, who is not a party to this lawsuit, but who, on the aforementioned date, was also a vendor of artworks at the same location as plaintiff, was issued a summons by defendant MORALES, returnable at the Criminal Court of the City of New York.

41. Plaintiff pointed out to defendant MORALES that his wife should not have been served a Criminal Court summons but that, if she were to be issued any summons at all, it should be returnable at the ECB.

42. In response to plaintiff, defendant MORALES brought defendant KHAN over to plaintiff.

43. Defendant KHAN proceeded to order plaintiff to close down his display.

44. Plaintiff protested defendant KHAN's order, stating that a decision as to whether or not his display should be closed was one that had to be made by a judge.

45. In response to plaintiff, defendant KHAN ordered defendant MORALES to arrest plaintiff.

46. Defendant MORALES complied with defendant KHAN's order, arresting plaintiff and falsely and maliciously charging him with obstruction of governmental administration in the second degree, an A misdemeanor; and disorderly conduct, a violation.

47. Defendant MORALES proceeded to handcuff plaintiff so tightly as to aggravate a pre-existing medical condition of plaintiff's right hand, causing him an extremely painful injury and requiring him to seek medical attention.

48. Defendant KHAN had defendant MORALES and other members of the New York City Police Department illegally and improperly seize plaintiff's art and displays and throw them into a New York City Police Department motor vehicle.

49. Plaintiff's aforementioned property was held at the Midtown North Precinct for eleven days, thereby depriving plaintiff of eleven days of work and the income resulting therefrom.

50. On or about December 5, 2016, the criminal charges against plaintiff were dismissed and sealed on the motion of the New York County District Attorney.

51. Defendant MORALES falsely and maliciously made the criminal charges against plaintiff without having any legal basis whatsoever to do so.

52. At the stationhouse, following plaintiff's arrest, defendant MORALES issued plaintiff two summonses falsely and maliciously alleging a violation of New York City Administrative Code §20-465 and one summons falsely and maliciously accusing him of having violated 6 R.C.N.Y. §2-304(a).

53. New York City Administrative Code §20-465 is titled "Restrictions on the placement of vehicles, pushcarts and stands; vending in certain areas prohibited."

54. 6 R.C.N.Y. §2-304(a) prohibits vending in certain portions of the roadway.

55. All three of the aforementioned summonses were dismissed by a hearing officer at the ECB on April 26, 2016.

56. Plaintiff's arrest on April 18, 2016 was a watershed moment in that it marked the resumption of a campaign of harassment against him that did not pause until 2018.

57. On May 3, 2016, defendant BERGEN physically assaulted plaintiff, insulted and threatened him, verbally denigrated his artwork, and then ordered defendant TANSEY to issue plaintiff a summons. The summons issued falsely and maliciously alleged a violation of New York City Administrative Code §20-465.1.

58. The summons issued on May 3, 2016, was dismissed at a hearing held before the ECB on June 1, 2016.

59. In a written decision, the ECB held that at the location where plaintiff conducted his business, namely in front of 701 Seventh Avenue, which is located between West 47th and West 48th Streets, a vendor of artworks could conduct his business at any time except when both food and general vending were both prohibited.

60. Subsequent to June 1, 2016, plaintiff informed defendant BERGEN that the summonses being issued by the various defendants were improper and were all being dismissed.

61. Defendant BERGEN replied, in sum and substance, that, as a New York City police officer, he could issue summonses to plaintiff every day and that he did not care what a judge had to say about it.

62. On June 18, 2016, defendant WILLIAMS issued a Criminal Court summons to plaintiff, which falsely, maliciously and illegally charged him with violating Administrative Code §20-465.1.

63. The summons issued to plaintiff on June 18, 2016 was dismissed in Criminal Court of the City of New York on September 7, 2016, when defendant WILLIAMS failed to appear in court for a trial.

64. On February 11, 2017, defendants O'HARA and BERGEN ordered defendant SCIALABBA to issue a summons to plaintiff. The summons was eventually dismissed.

65. A summons was issued to plaintiff on July 21, 2017.

66. Following the dismissal of this summons, there was a hiatus in the pattern of harassment that plaintiff had been subjected to.

67. For a period of ten and one-half months, he was permitted to conduct his business in front of 701 Seventh Avenue on a daily basis without the clear legality of his operation being questioned.

68. However, commencing on June 1, 2018, plaintiff was subjected to a campaign of harassment from members of the New York City Police Department that exceeded anything that had gone before.

69. Between June 1, 2018, and October 14, 2018, plaintiff was served with a total of twenty-one summonses, each one falsely and maliciously charging him either with vending in a location or in a manner in violation of the New York City Administrative Code.

70. Plaintiff was falsely and maliciously charged with violating the New York City Administrative Code during the period June 1 through October 14, 2018 as follows:

| Date | Administrative Code Section | Summons Writer/Supervisor or Partner |
|---|---|---|
| June 1, 2018 | §20-465.1 | McGURRAN |
| June 21, 2018 | §20-465.1 | LACHMENAR/MURPHY/KHAN |
| July 10, 2018 | §20-465(d) | DiCANDIA/SCHACK |
| July 16, 2018 | §20-465.1 | McGURRAN |
| July 18, 2018 | §20-465.1 | DESALTO/KHAN |
| July 18, 2018 | §20-465.1 | LACHMENAR/KHAN |
| July 21, 2018 | §20-465(d) | DiCANDIA/SCHACK |
| July 27, 2018 | §20-465.1 | DiCANDIA/SCHACK |
| July 27, 2018 | §20-465(d) | DiCANDIA/SCHACK |
| July 28, 2018 | §20-465.1 | MOHANDES |
| August 1, 2018 | §20-465.1 | MOHANDES |
| August 6, 2018 | §20-465.1 | ESPINAL/FORLENZA |
| August 14, 2018 | §20-465.1 | LACHMENAR |
| August 16, 2018 | §20-465.1 | RAHMAN |
| August 27, 2018 | §20-461.1 | LACHMENAR/MOHANDES |
| August 27, 2018 | §20-465.1 | LACHMENAR/MOHANDES |
| September 3, 2018 | §20-465.1 | LACHMENAR/MOHANDES/MURPHY |
| September 4, 2018 | §20-465.1 | LACHMENAR/MOHANDES/MURPHY |
| September 12, 2018 | §20-465.1 | LACHMENAR |
| September 15, 2018 | §20-465.1 | RAHMAN |
| October 14, 2018 | §20-465 | GAO |

71. Each and every one of the aforementioned twenty-one summonses was returnable at the New York City Office of Administrative Trials and Hearings (hereinafter "OATH") and each and every one was dismissed by OATH following either a hearing or an appeal of a hearing officer's decision.

72. Subsequent to October 14, 2018, plaintiff, upon information and belief, was issued three additional summonses, all returnable at OATH. However, the police officers who issued these summonses never filed them with OATH.

73. In addition to his being issued all the summonses enumerated in this complaint, not one of which was valid, plaintiff has also been subjected to the intentional and malicious confiscation and destruction of his personal property.

74. On or about August 14, 2018, defendants KHAN, LACHMENAR, MOHANDES and MURPHY seized plaintiff's display, comprised of works of art he had created, left it out in the rain so as to permanently damage it, and confiscated it.

75. On August 24, 2018, plaintiff received written authorization from the Office of the Corporation Counsel of the City of New York that entitled him to retrieve the aforementioned property.

76. However, plaintiff has not been able to obtain his aforementioned property because he refuses to execute a release for it until he is permitted to assess the damage that was done to it by defendants KHAN, LACHMENAR, MOHANDES and MURPHY.

77. As a result, defendants have failed and refused to return plaintiff's aforementioned property to him.

78. Consequently, plaintiff has suffered a precipitous drop in his income.

79. On or about August 18, 2018, when plaintiff attempted to retrieve his confiscated property, defendant MURPHY told him defendant TIMES SQUARE ALLIANCE and at least two Times Square area retail establishments did not want plaintiff vending his artwork on the sidewalk.

80. After a hiatus, on January 8, 2020, plaintiff was issued a summons by defendant HENRY, which summons illegally and maliciously charged him with violating New York City Administrative Code §20-465.1. The aforementioned summons was dismissed at a hearing before OATH on or about January 27, 2020.

81. Defendants violated plaintiff's rights, guaranteed to him by the first, fourth, fifth and fourteenth amendments to the Constitution of the United States, to sell works of art that he had created, pursuant to local ordinances regulating the time, place and manner in which such sales are made; to not be arrested without probable cause; to be free from the use of excessive force; and to not have his personal property confiscated; in that, while acting under color of state law, the individual defendants hereto, as identified hereinabove, consistently issued plaintiff summonses for appearances before Criminal Court or an administrative tribunal falsely and maliciously charging him with violations of the New York City Administrative Code that he had not committed; ignored evidence offered by plaintiff demonstrating that he was not violating provisions of the New York City Administrative Code that he was being charged with; falsely arrested plaintiff and maliciously charged him with obstructing governmental administration and disorderly conduct; intentionally damaged, destroyed and confiscated plaintiff's personal property, which he used in his business, without due process of law; and intentionally and maliciously harmed plaintiff's business through a pattern of unremitting legal harassment that consisted of abusing legal process by repeatedly issuing summonses for non-existent violations of the New York City Administrative Code with the intention, not of enforcing said ordinances, but of harming and interfering with plaintiff's business.

82. As a result of the aforementioned violations of rights guaranteed to plaintiff by the first, fourth, fifth and fourteenth amendments to the Constitution of the United

States, the individual defendants hereto caused plaintiff injury to his right wrist requiring medical treatment, forced plaintiff to repeatedly lose time and income from his business because of the necessity of appearing at Criminal Court and administrative tribunals to defend against the charges falsely and maliciously made against him, deprived plaintiff of his liberty, damaged plaintiff's business and means of earning his living, thereby greatly reducing the income that he derives therefrom, and caused plaintiff to suffer extreme mental anguish.

83. As a result of the aforementioned denial of rights guaranteed to him by the first, fourth, fifth and fourteenth amendments to the Constitution of the United States, plaintiff has been damaged in an amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against the individual defendants.

84. In addition, plaintiff requests an order of this Court directing defendants to return to him the display of his work that was damaged and confiscated by defendants KHAN, LACHMENAR, MOHANDES and MURPHY on August 14, 2018.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT CITY OF NEW YORK
### (42 U.S.C. §1983)

85. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "84" hereinabove as if more fully set forth at length herein.

86. Defendant CITY OF NEW YORK, acting through its Police Department and through the individual defendants, maintained and maintains policies, practices, customs and usages that were and are a direct and proximate cause of the unconstitutional conduct alleged herein.

87. Upon information and belief, defendant CITY OF NEW YORK, through its Police Department, determined to harass first amendment-protected vendors, including plaintiff, so as to prevent such vendors, including plaintiff, from offering works of art for sale to the public on the sidewalk in front of certain retail premises although the subject locations are in areas where the first amendment-protected vendors, including plaintiff, are authorized to conduct business.

88. In acting as aforementioned, defendant CITY OF NEW YORK, through its Police Department, violated its own Police Department's Operation Order No. 32 of 2002, which specifically instructs its police officers that they are not to interfere with the lawful activities of first amendment-protected vendors.

89. In fact, defendant CITY OF NEW YORK, through superior officers in its Police Department, specifically instructed the individual defendants to this action to act in violation of Operation Order No. 32 of 2002, which directive instructs police officers as to the rights of first amendment protected vendors as established by the New York City Administrative Code and court decisions.

90. Thus, defendant CITY OF NEW YORK, in issuing instructions to its police officers in direct contravention of Operation Order No. 32 of 2002, implements, enforces, encourages, sanctions and/or ratifies policies, practices and/or customs of harassing, falsely arresting and maliciously prosecuting first amendment protected vendors, including plaintiff, and thereby directly contradicts its own written policies regarding the constitutional prohibitions on interfering with the livelihood of first amendment protected vendors.

91. By implementing, enforcing, encouraging, sanctioning and/or ratifying the aforementioned policies, practices and/or customs in contravention of its own written

directives, defendant CITY OF NEW YORK has caused plaintiff to be subjected to constant harassment through the issue to, and service upon him of, summonses without probable cause to do so and to be subjected to excessive force and to the unnecessary destruction of his personal property, all in violation of the rights guaranteed to him by the first, fourth, fifth and fourteenth amendments to the Constitution of the United States.

92. As a result of the foregoing, plaintiff has suffered a loss of his liberty, serious injury to his right wrist, damage to his business and loss of his income, destruction of his personal property and a diminution of his first amendment right to express himself by selling his works of art.

93. As a result of the aforementioned denials of the rights guaranteed to plaintiff by the first, fourth, fifth and fourteenth amendments to the Constitution of the United States, defendant CITY OF NEW YORK has damaged plaintiff in an amount sufficient to compensate him for his injuries as enumerated hereinabove.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT TIMES SQUARE ALLIANCE
### (42 U.S.C. §1983)

94. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "93" hereinabove as if more fully set forth at length herein.

95. At all times relevant hereto, defendant TIMES SQUARE ALLIANCE was and is a not-for-profit organization incorporated in the State of New York.

96. Defendant TIMES SQUARE ALLIANCE receives a majority of its financial support from a real estate special assessment levied by defendant CITY OF NEW YORK on properties located in the Times Square Improvement District.

97. The Times Square Improvement District's boundaries are from approximately West 40th Street to West 53rd Street, between 6th Avenue and 8th Avenue, and West 46th Street between 8th Avenue and 9th Avenue, all in the County, City and State of New York.

98. The board of directors of the TIMES SQUARE ALLIANCE is composed of the owners of businesses located in the area of Times Square along with the representatives of a non-profit organization, a labor union and a resident of the area. Also serving on the board are the President of the Borough of Manhattan, the Speaker of the New York City Council, the Comptroller of the City of New York and the Commissioner of the New York City Department of Small Business Services.

99. Defendant TIMES SQUARE ALLIANCE has and continues to engage in a pattern and practice of requesting and encouraging members of the New York City Police Department, including, but not limited to, the individual defendants herein, to harass vendors legally working within the Times Square District, including plaintiff.

100. As stated in paragraph "78" hereinabove, one of the defendants to this action informed plaintiff on August 18, 2018, that defendant TIMES SQUARE ALLIANCE and two retail establishments located within the Times Square District did not want plaintiff vending his artwork on the sidewalk in front of 701 7th Avenue.

101. Defendant TIMES SQUARE ALLIANCE, acting under color of state law, has thus violated plaintiff's rights, guaranteed to him by the first, fourth, fifth and fourteenth amendments to the Constitution of the United States, to sell works of art that he had created, pursuant to local ordinances regulating the time, place and manner in which such sales are made; to not be arrested without probable cause; to be free from the use of excessive force; and to not have his personal property confiscated in that,

while acting at the direction of the members of its board, including, the four representatives of defendant CITY OF NEW YORK and in importuning members of the Police Department of the City of New York, including the individual defendants hereto, to issue plaintiff summonses without probable cause and to confiscate his property have intentionally and maliciously harmed plaintiff's business through a pattern of unremitting legal harassment consisting of abusing legal process by repeatedly issuing summons for non-existent violations of the New York City Administrative Code with the intention, not of enforcing such ordinances, but of harming and interfering with plaintiff's business.

102. As a result of the aforementioned violations of rights guaranteed to plaintiff by the first, fourth, fifth and fourteenth amendments to the Constitution of the United States, the defendant TIMES SQUARE ALLIANCE caused plaintiff injury to his right wrist requiring medical treatment, forced plaintiff to repeatedly lose time and income from his business because of the necessity of appearing at Criminal Court and administrative tribunals to defend against the charges falsely and maliciously made against him, deprived plaintiff of his liberty, damaged plaintiff's business and means of earning his living, thereby greatly reducing the income that he derives therefrom, and caused plaintiff to suffer extreme mental anguish.

103. As a result of the aforementioned denial of rights guaranteed to him by the first, fourth, fifth and fourteenth amendments to the Constitution of the United States, plaintiff has been damaged in an amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendant TIMES SQUARE ALLIANCE.

WHEREFORE, plaintiff, PETER GRYSTYK, demands judgment against defendants P.O. ANTHONY MORALES, Shield No. 5056, LIEUTENANT SUJAT KHAN,

SERGEANT MATTHEW BERGEN, Shield No. 3460, SERGEANT JEFFREY MURPHY, Shield No. 3634, SERGEANT DOUGLAS SCHACK, Shield No. 3250, P.O. CHRISTOPHER TANSEY, Shield No. 2825, P.O. CHRISTOPHER WILLIAMS, Shield No. 3659, CAPTAIN O'HARA, P.O. DAVID LACHMENAR, Shield No. 21671, P.O. JUAN DESALTO, Shield No. 15080, SERGEANT BRENDAN McGURRAN, Shield No. 3723, P.O. RICARDO DiCANDIA, Shield No. 18015, P.O. MATHIMOHMAN MOHANDES, Shield No. 11894, P.O. JOSE ESPINAL, Shield No. 20735, SERGEANT VINCENT FORLENZA, Shield No. 3906, P.O. RAHMAN, P.O. GAO, P.O. HENRY, TIMES SQUARE DISTRICT MANAGEMENT ASSOCIATION, INC. a/k/a TIMES SQUARE ALLIANCE and THE CITY OF NEW YORK, as follows:

FIRST CAUSE OF ACTION:   An amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against the individual defendants and the return to him of the property taken from him on August 14, 2018;

SECOND CAUSE OF ACTION:   An amount sufficient to compensate him for his injuries as enumerated hereinabove; and

THIRD CAUSE OF ACTION:   An amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendant TIMES SQUARE ALLIANCE.

In addition, plaintiff demands the costs and disbursements of this action, including his attorney's fees, pursuant to 42 U.S.C. §1988.

Dated: Kew Gardens, New York
April 7, 2020

_____
ALAN D. LEVINE, ESQ.
Attorney for Plaintiff
80-02 Kew Gardens Road, Suite 307
Kew Gardens, New York 11415
(718) 793-6363
Our File No: 2371