UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                    :
PETRO GRYTSYK,                                                      :
                                                                    :
                              Plaintiff,                            :
                                                                    :         19-CV-3470 (JMF)
              -v-                                                   :
                                                                    :         OPINION AND ORDER
P.O. ANTHONY MORALES, *Shield No. 5056*, et al.,                    :
                                                                    :
                              Defendants.                           :
                                                                    :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

　　　Plaintiff Petro Grytsyk, an artist who has long sold his work on a Manhattan sidewalk,

brings claims pursuant to 42 U.S.C. § 1983 against the City of New York (the "City") and

nineteen officers (the "Individual Defendants") from the New York City Police Department

("NYPD"), arising from an arrest in April 2016 and from nearly thirty summonses he received in

the months and years thereafter relating to his street vending.[1]  Defendants now move, pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of Grytsyk's claims.  ECF

No. 41.  For the reasons that follow, the motion is granted in part and denied in part.

---

[1]　　　The Individual Defendants are Officer Anthony Morales, Lieutenant Sujat Khan,
Sergeant Matthew Bergen, Sergeant Jeffrey Murphy, Sergeant Douglas Schack, Officer
Christopher Tansey, Officer Christopher Williams, Captain O'Hara, Officer David Lachmenar,
Officer Juan Desalto, Officer Louis Scialabba, Sergeant Brendan McGurran, Officer Ricardo
DiCandia, Officer Mathimohman Mohandes, Officer Jose Espinal, Sergeant Vincent Forlenza,
Officer Rahman, Officer Gao, and Officer Henry.

## BACKGROUND

The following relevant facts, drawn from the operative amended complaint (the "Complaint"), *see* ECF No. 35 ("Compl."), are taken as true and construed in the light most favorable to Grytsyk. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Since 2010, Grytsyk has sold artwork of his creation on the sidewalk in front of 701 Seventh Avenue, between West 47th and West 48th Streets in New York City. Compl. ¶ 30. Grytsyk maintains — and, at least for purposes of this motion, Defendants do not dispute — that, under the applicable vending regulations, he is entitled to "display and offer his art for sale" at that location "at any time except at those times when both food and general vendors are not permitted to sell their wares." *Id.* ¶ 34; *see* ECF No. 43 ("Defs.' Mem."), at 2; ECF No. 54 ("Defs.' Reply"), at 2. On April 18, 2016, Grytsyk and his wife were both selling artwork in front of 701 Seventh Avenue when Defendant Officer Morales issued Grytsyk's wife a summons returnable at the Criminal Court of the City of New York. Compl. ¶ 40. Grytsyk "pointed out to" Morales "that his wife should not have been served a Criminal Court summons but that, if she were to be issued any summons at all, it should be returnable" to the New York City Environmental Control Board ("ECB"). *Id.* ¶ 41.

"In response," Officer Morales summoned Lieutenant Khan, who "proceeded to order [Grytsyk] to close down his display." *Id.* ¶¶ 42-43. Grytsyk "protested" Khan's order, "stating that a decision as to whether or not his display should be closed was one that had to be made to a judge." *Id.* ¶ 44. "In response," Lieutenant Khan directed Officer Morales to arrest Grytsyk; Officer Morales did so and charged Grytsyk with both obstruction of governmental administration ("OGA") in the second degree and disorderly conduct. *Id.* ¶¶ 45-46. In conducting the arrest, Officer Morales "handcuff[ed Grytsyk] so tightly as to aggravate a pre-

existing medical condition of [his] right hand, causing him an extremely painful injury" for which he later sought medical attention. *Id.* ¶ 47. Lieutenant Khan also directed Officer Morales and other NYPD officers to seize Grytsyk's art and displays, which the NYPD then held at the Midtown North Precinct for eleven days. *Id.* ¶¶ 48-49.

At the stationhouse following the arrest, Officer Morales issued three summonses to Grytsyk. *Id.* ¶ 52. Two alleged violations of New York City Administrative Code § 20-465, which imposes certain time, place, and manner restrictions on sidewalk vendors; and one alleged a violation of 6 R.C.N.Y. § 2-304(a), which prohibits general vendors from conducting business in a roadway where and/or when stopping, standing, or parking is prohibited or restricted. *Id.* ¶¶ 52-54; *see* N.Y.C. Admin. Code § 20-452(b) (defining a "general vendor" in this context as "[a] person who hawks, peddles, sells, leases or offers to sell or lease, at retail, goods or services . . . in a public space," with certain exceptions including "food vendors"); *id.* § 17-306(c) (defining a "food vendor" as "[a] person who hawks, peddles, sells or offers food for sale at retail in any public space"). In a box on the summonses labeled "Date of Offense," Officer Morales handwrote "4/18/16"; and in a box labeled "Time," he handwrote 1:15 p.m. ECF No. 42-1, at 2-3. An ECB hearing officer dismissed all three of these summonses eight days later, on April 26, 2016. Compl. ¶ 55.

Grytsyk contends that the April 18, 2016 arrest "was a watershed moment" marking the launch of a "campaign of harassment against him that did not pause until 2018." *Id.* ¶ 56. More specifically, he alleges that, between May 3, 2016 and October 14, 2018, NYPD officers issued him a total of twenty-five summonses relating to his sales of artwork. *Id.* ¶¶ 57, 62, 64-65, 70.

The first came on May 3, 2016, when Sergeant Bergen physically assaulted, insulted, and threatened Grytsyk, and then ordered Officer Tansey to issue him a summons. *Id.* ¶ 57. The

summons alleged a violation of New York City Administrative Code § 20-465.1 and was dismissed at a hearing before the ECB on June 1, 2016 (after which the ECB issued a written opinion holding that a vendor of artwork could conduct his business at any time except when both food and general vending were prohibited at the location in front of 701 Seventh Avenue). *Id*. ¶¶ 57-59.  Following the ECB's decision, Grytsyk told Sergeant Bergen that the summonses the NYPD was issuing him were improper and were being dismissed, to which Sergeant Bergen replied that "he could issue summonses to [Grytsyk] every day and that he did not care what a judge had to say about it." *Id.* ¶¶ 60-61.

Next, on June 18, 2016, Defendant Officer Williams issued Grytsyk a Criminal Court summons alleging another violation of Administrative Code § 20-465.1; this summons was also dismissed, on September 7, 2016, when Officer Williams failed to appear in court. *Id*. ¶¶ 62-63. And on February 11, 2017, Captain O'Hara and Sergeant Bergen ordered Officer Scialabba to issue Grytsyk a summons, which he did.  This summons was subsequently dismissed as well — as was another summons issued (by whom the Complaint does not say) to Grytsyk on July 21, 2017.  *Id.* ¶¶ 64-65.  In the meantime, on December 5, 2016, the criminal charges that had been filed against Grytsyk stemming from the April 18, 2016 arrest were dismissed and sealed on motion by the New York County District Attorney.  *Id.* ¶ 50.  The Certificate of Disposition (of which the Court can take judicial notice, *see McBeth v. Porges*, 171 F. Supp. 3d 216, 221 (S.D.N.Y. 2016)) indicates that the charges were dismissed pursuant to "speedy trial provisions." ECF No. 42-2 (capitalization altered).

Grytsyk alleges that, following the dismissal of the July 21, 2017 summons, "there was a hiatus in the pattern of harassment that [he] had been subjected to."  Compl. ¶¶ 66-67.  It came to an end in the summer of 2018.  Between June 1, 2018 and October 14, 2018, in a "campaign of

harassment" that "exceeded anything that had gone before," Grytsyk was served with twenty-one additional summonses for violations of the New York City Administrative Code by some combination of the following Defendants: Sergeant McGurran, Officer Lachmenar, Sergeant Murphy, Lieutenant Khan, Officer DiCandia, Sergeant Schack, Officer Desalto, Officer Mohandes, Officer Espinal, Sergeant Forlenza, Officer Rahman, and Officer Gao. *Id.* ¶¶ 68-70. Each of these summonses was returnable at the New York City Office of Administrative Trials and Hearings ("OATH"); each was eventually dismissed. *Id.* ¶ 71.

Officer Lachmenar issued one of these twenty-one summonses, for a violation of Section 20-465.1 of the Administrative Code, to Grytsyk on August 14, 2018. *Id.* ¶ 70. That same day, Lieutenant Khan, Officer Lachmenar, Officer Mohandes, and Sergeant Murphy also "seized" Grytsyk's display of artwork, "left it out in the rain so as to permanently damage it, and confiscated it." *Id.* ¶ 74. Four days later, Grytsyk unsuccessfully attempted to retrieve the confiscated artwork, but Sergeant Murphy told him that the Times Square District Management Association, Inc. ("Times Square Alliance") — a nonprofit organization, the board of which is composed of Times Square-area business owners, a neighborhood resident, labor union representatives, representatives from a non-profit organization, and various government officials — and "at least two Times Square area retail establishments did not want [Grytsyk] vending his artwork on the sidewalk." *Id.* ¶¶ 79, 95, 98. On August 24, 2018, Grytsyk received "written authorization" from the City "that entitled him to retrieve" the artwork. *Id.* ¶ 75. But Grytsyk has not retrieved the confiscated artwork to date, as "he refuses to execute a release for it until he is permitted to assess the damage that was done to it." *Id.* ¶¶ 76-77.

Following the October 14, 2018 summons, unnamed NYPD officers issued to Grytsyk another three summonses, all returnable at OATH; but these were never filed with OATH by the

issuing police officers.  *Id.* ¶ 72.  Finally, after another hiatus, Officer Henry issued Grytsyk

another summons on January 8, 2020 for violating Section 20-465.1; this summons was also

dismissed at a January 27, 2020 hearing before OATH.  *Id.* ¶ 80.

Grytsyk filed this lawsuit on April 18, 2019, initially naming the City and all Individual

Defendants other than Officer Henry.  *See* ECF No. 1.  Grytsyk filed the operative, amended

Complaint on April 7, 2020, adding Officer Henry and Times Square Alliance as Defendants.

Compl.  The City and the eighteen initially named Individual Defendants moved to dismiss the

Complaint on May 5, 2020.  ECF No. 41.  Earlier today, Henry joined their motion.  ECF No.

80.  Times Square Alliance moved to dismiss the Complaint on February 5, 2021, *see* ECF No.

71, but Grytsyk subsequently voluntarily dismissed his claims against Times Square Alliance

without prejudice, thereby mooting that motion, ECF No. 78.

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must

accept all facts set forth in the Complaint as true and draw all reasonable inferences in Grytsyk's

favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per

curiam).  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts

sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A

plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*,

and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.

If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## DISCUSSION

Grytsyk brings, and Defendants move to dismiss, a veritable smorgasbord of Section 1983 claims, namely for: false arrest, malicious prosecution, excessive force, deprivation of property, and malicious abuse of process. Because the first four claims all arise, wholly or in part, from the events of April 18, 2016, the Court will begin with them. The Court will then turn to Grytsyk's malicious abuse of process claim, which is based on events from June through October 2018. Finally, the Court addresses Grytsyk's municipal liability claim.

## A. False Arrest

The Court begins with Grytsyk's false arrest claim. To state a Section 1983 false arrest claim, a plaintiff must allege "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (internal quotation marks omitted); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law."). Thus, a plaintiff may not bring a false arrest claim if there was probable cause to arrest him for an offense. *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 81 (2d Cir. 2014). Probable cause to arrest exists if an arresting officer has actual "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. A court must consider the "totality of the circumstances" in evaluating whether the "facts available to the officer at the time of the arrest"

meet that threshold. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (internal quotation marks omitted). Significantly, it is enough to defeat a claim that probable cause existed for *some* offense; that is, it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.); *accord Figueroa v. Mazza*, 825 F.3d 89, 99-100 (2d Cir. 2016).

Defendants, however, can prevail on Grytsyk's false arrest claim even in the absence of actual probable cause. That is because a law enforcement officer is entitled to qualified immunity if only "arguable probable cause" existed — that is, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotation marks omitted); *see Kass v. City of New York*, 864 F.3d 200, 205-07 (2d Cir. 2017) (holding that the defendant officers were entitled to qualified immunity because there was arguable probable cause, without reaching the question of whether there was actual probable cause). Specifically, the doctrine of qualified immunity provides a complete defense where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, *or* (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (emphasis added); *accord Kass*, 864 F.3d at 206 ("The qualified immunity defense . . . is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013))). Significantly, however, "in the Rule 12(b)(6) context, the facts supporting the defense of qualified immunity must appear on the face of the complaint; even then, a motion to dismiss

may be granted on qualified immunity grounds only if the plaintiff fails to plausibly allege a claim for relief." *Sullivan v. City of New York*, No. 14-CV-1334 (JMF), 2015 WL 5025296, at *8 (S.D.N.Y. Aug. 25, 2015) (citing cases); *accord Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 183-84 (S.D.N.Y. 2017).

In this case, Defendants argue that Grytsyk's false arrest claim should be dismissed because there was probable cause or arguable probable cause to arrest him for three offenses under New York law: OGA, disorderly conduct, and violations of sidewalk vending regulations. *See* Defs.' Mem. 6-13; Defs.' Reply 1-5. The Court will address each offense in turn.

### 1.  OGA

Under New York law, "OGA has four elements: '(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference.'" *Antic v. City of New York*, 740 F. App'x 203, 206 (2d Cir. 2018) (summary order) (quoting *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010)); *see* N.Y. Penal Law § 195.05. "With respect to the fourth element, actionable 'interference can consist of inappropriate and disruptive conduct at the scene of the performance of an official function even if there is no physical force involved.'" *Id.* (quoting *Kass*, 864 F.3d at 209-10). Some courts in this Circuit have interpreted the element broadly, observing that "merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011). *But cf. Hilderbrandt v. City of New York*, No. 13-CV-1955 (ARR) (VVP), 2014 WL 4536736, at *6 (E.D.N.Y. Sept. 11, 2014) (stating that "[t]he quoted portion of *Rasmussen* is pure dicta" and "unsupported by the three cases it cites"). At the same time, the fourth element is not without substance. For example, "the interference must at least in part be 'physical' and cannot consist

solely of verbal statements." *Kass*, 864 F.3d at 209 (citing *People v. Case*, 42 N.Y.2d 98, 101-02 (1977)); *accord Uzoukwu v. City of New York*, 805 F.3d 409, 414-15 (2d Cir. 2015) ("[P]urely verbal interference may not satisfy the physical component under Penal Law § 195.05." (internal quotation marks omitted)).

Applying these standards here, the Court cannot conclude at this stage of the litigation that there was either probable cause or arguable probable cause to arrest Grytsyk for OGA. Defendants argue that Grytsyk "interfered in the issuance of a summons to his wife, and refused to comply with orders from defendants Morales and Khan to close down his display." Defs.' Mem. 9. With respect to the former, however, the Complaint alleges only that Grytsyk's wife, who was "a vendor of artworks at the same location . . . , was issued a summons" by Officer Morales and that Grytsyk then "pointed out" to Officer Morales that "his wife should not have been served a Criminal Court summons but that, if she were to be issued any summons at all, it should be returnable at the ECB." Compl. ¶¶ 40-41. Assuming the truth of these allegations and considering them in the light most favorable to Grytsyk, as the Court must, this alleged "interference" therefore consisted "solely of verbal statements." *Kass*, 864 F.3d at 209. Yet, "[w]ords alone, even abusive ones, cannot give rise to probable cause to arrest for obstructing governmental administration as a matter of law." *Fana v. City of New York*, No. 15-CV-8114 (PGG), 2018 WL 1581680, at *8 (S.D.N.Y. Mar. 27, 2018) (internal quotation marks omitted); *see Kass*, 864 F.3d at 209; *see also Scott v. City of New York*, No. 16-CV-834 (NGG) (ST), 2020 WL 208915, at *6 (E.D.N.Y. Jan. 14, 2020) ("Such interference 'must be . . . physical'; mere yelling is insufficient." (quoting *Basinski v. City of New York*, 706 F. App'x 693, 697 (2d Cir. 2017) (summary order))); *Hilderbrandt*, 2014 WL 4536736, at *4-5 ("Courts have made clear that the statute requires *physical* interference with police action to support an OGA arrest. . . .

"[T]he rule [is] that words alone . . . cannot give rise to probable cause to arrest for obstructing governmental administration as a matter of law." (internal quotation marks omitted)).

As for Grytsyk's alleged "refus[al] to comply with *orders* . . . to close down his display," Defs.' Mem. 9 (emphasis added), the Complaint alleges only a single order, *see* Compl. ¶ 43, and says merely that Grytsyk "protested" it, "stating that a decision as to whether or not his display should be closed was one that had to be made by a judge," *id.* ¶ 44.  Although "[u]nder certain circumstances, a finding of interference may be predicated on a defendant's refusal to obey orders to leave a premises, to step back from an accident scene or to keep away from an area where a disturbance is taking place," a mere failure "to obey a police order, in and of itself, does not constitute a circumstance that gives rise to probable cause for an arrest for obstructing government administration.  The failure to obey the order must create some other hazard or interference to rise to the level of obstruction necessary for obstructing government administration."  *Fana*, 2018 WL 1581680, at *8 (cleaned up).  Thus, for example, the fourth OGA element "may be met where an individual's refusal to obey orders evidences an attempt to interfere with officers' efforts to address a volatile situation, such as an altercation or medical emergency," or "when an individual repeatedly disobeys orders to move away from a zone of danger, thereby preventing officials from performing an official function."  *Id.* (cleaned up).  By contrast, the element "is not satisfied . . . where the individual's refusal to obey every command to back up is merely annoying and distracting."  *Id.* (internal quotation marks omitted).  Drawing all inferences in Grytsyk's favor, the Court cannot say that the allegations in the Complaint even

establish a refusal to comply with an order, let alone that such refusal rose to the level of

obstruction necessary for obstructing government administration.[2]

      The cases on which Defendants rely are easily distinguished.  *See Kass*, 864 F.3d at 210

(arguable probable cause where the plaintiff "refused to obey the officers' repeated orders to

move along" and, after the officer "placed his hand on [the plaintiff's] elbow to guide [the

plaintiff] away from the barricades, [the plaintiff] instructed [the officer] to 'get [the officer's]

hands off' of him and pulled away"); *Schramm v. City of New York*, No. 16-CV-553 (AKH),

2019 WL 6791462, at *6 (S.D.N.Y. Dec. 11, 2019) (probable cause where the plaintiff "was

instructed several times to step away from the scene of [her husband's] arrest" in order "to avoid

an already tense situation from escalating further" and she "refused to do so"); *Joseph v. Deluna*,

No. 15-CV-5602 (KMW), 2018 WL 1474398, at *4 (S.D.N.Y. Mar. 23, 2018) ("at a minimum,"

arguable probable cause where it was "not disputed that [the officer] told [the plaintiff] to leave

the scene by the count of three and, when [the plaintiff] failed to do so, [the officer] reached out

to arrest [the plaintiff], whereupon [the plaintiff] pulled his hand away," all "while a man and a

woman were screaming at each other [nearby], even as one was in handcuffs and both were

surrounded by police officers" (internal quotation marks omitted)); *Garcia v. County of*

*Westchester*, No. 11-CV-7258 (KMK), 2017 WL 6375791, at *16-17 (S.D.N.Y. Dec. 12, 2017)

(arguable probable cause where the plaintiff, "at the scene of a shooting, where a vehicle had

---

[2]     In addition, New York courts have held that, for purposes of OGA, "the official function being performed must be one that was 'authorized by law.'"  *Gogol v. City of New York*, No. 15-CV-5703 (ER), 2017 WL 3449352, at *4 (S.D.N.Y. Aug. 10, 2017) (quoting *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995)).  Grytsyk, of course, alleges that the officers' actions on April 18, 2016, were not lawful.  *See* Compl. ¶¶ 30-51.  Whether that was the case or not turns on facts beyond the Complaint.  *See, e.g.*, *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 157 (S.D.N.Y. 2006) (on a motion to dismiss, rejecting an argument that there was arguable probable cause to arrest for OGA because, "assuming the facts alleged in the Complaint, the police were not engaged in lawful conduct").

struck an officer and two individuals had been shot," approached the "area in which officers were confronting [the suspect] and effecting an arrest"); *Basinski v. City of New York*, 192 F. Supp. 3d 360, 366 (S.D.N.Y. 2016) (probable cause where the plaintiff was "taller than" the officer, and, in a "way that [wa]s physically imposing, . . . repeatedly slid his hand into his pants pocket during the course of the interaction, . . . kept his arm elevated in order to hold his phone at face level, within striking distance of the officer[,] . . . was vociferously argumentative with [the officer], interjected into interactions with third parties in a seemingly provocative manner, and drew [the officer's] attention away from the summons-related interaction with the vendor"), *aff'd*, 706 F. App'x 693; *Esmont v. City of New York*, 371 F. Supp. 2d 202, 211 (E.D.N.Y. 2005) (probable cause where the plaintiff "refused to move from her driveway to permit New York Department of Health employees to enter her yard to perform a [lawful] compliance inspection").

Moreover, *none* of these cases was decided on a Rule 12(b)(6) motion. Indeed, with one exception, all of them were decided on summary judgment and involved a careful parsing of the evidence to assess whether the plaintiff's alleged interference rose to the level of obstruction. The one exception is *Kass*, in which the Second Circuit held that the district court had erred in denying a motion for judgment on the pleadings based on qualified immunity. *See* 864 F.3d at 203. But even in *Kass*, the court was not limited to the allegations in the complaint, as the Court is here. Instead, the record in *Kass* included "a video that the parties concede[d was] authentic and accurate" and, thus, the court "view[ed] the allegations in the complaint as true *only to the extent that they [we]re not contradicted by video evidence*." *Id.* at 206 (emphasis added) (internal quotation marks omitted). And, of course, the "interference" in *Kass* was "at least in part . . . physical" and did not "consist solely of verbal statements." *Id.* at 209 (internal quotation marks omitted); *see id.* at 210 ("Kass *physically* interfered with the officers' efforts to confine

the protest to the park and keep the sidewalk clear for pedestrians." (emphasis added)); *id.* ("A reasonable officer could conclude under these circumstances that Kass had *physically* [gotten] in the way of and had frustrated the officers' efforts to contain the protest and prevent sidewalk congestion." (emphasis added) (internal quotation marks omitted)).  Drawing all inferences in Grytsyk's favor, the Court cannot say the same here.  And it certainly cannot say that "the facts supporting the defense of qualified immunity . . . appear on the face of the complaint." *Sullivan*, 2015 WL 5025296, at *8.

### 2. Disorderly Conduct

Defendants' second argument — that there was probable cause (or arguable probable cause) to arrest Grytsyk for disorderly conduct — is more easily rejected.  For starters, Defendants fail to develop this argument sufficiently.  In their opening memorandum of law, Defendants merely recite the elements of the crime in a single sentence, Defs.' Mem. 7, and then assert in conclusory fashion that Grytsyk committed it, *id.* at 9, 16.  And while they do devote more ink to the crime in their reply, their argument is ultimately that there was probable cause to arrest Grytsyk for a *different* crime — namely, violation of vending-related regulations.  *See* Defs.' Reply 4.  Accordingly, for purposes of this motion, Defendants have forfeited any argument that there was probable cause (or arguable probable cause) to arrest Grytsyk for the offense of disorderly conduct.  *See, e.g.*, *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . . ."); *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) ("[A] "single, conclusory, one-sentence argument" is

insufficient to raise an issue in the first instance." (quoting *Cuoco v. Mortisugo,* 222 F.3d 99, 112 n.4 (2d Cir. 2000))).

In any event, on this record, the Court cannot conclude there was even arguable probable cause to arrest Grytsyk for disorderly conduct.  "To prove the crime of disorderly conduct under N.Y. Pen. L. § 240.20 the prosecution must establish three elements: (i) the defendant's conduct must be public in nature, (ii) it must be done with intent to cause public inconvenience, annoyance or alarm or with recklessness as to a risk thereof, and (iii) it must match at least one of the descriptions set forth in the statute." *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001) (footnote and internal quotation marks omitted).  With respect to Section 240.20(5), the only provision of the statute that Defendants cite here, Defs.' Mem. 7, "[t]he Second Circuit requires a showing that the putative offender was 'actually and immediately blocking' the pedestrian or vehicular traffic in question," *Case v. City of New York*, 408 F. Supp. 3d 313, 320 (S.D.N.Y. 2019) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 372 (2d Cir. 2007)); *accord Sherrard v. Redmond*, No. 15-CV-7318 (MAB) (KNF), 2018 WL 11213053, at *4 (S.D.N.Y. Mar. 5, 2018).  Moreover, "New York courts have interpreted this statute to permit punishment only where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic." *Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006) (Sotomayor, J.).  The Complaint contains no allegations whatsoever about the state of pedestrian or vehicular traffic flow on April 18, 2016; Grytsyk's position in relation to any traffic flow and whether it interfered; or whether anyone else was even in the vicinity.  It follows that, construing these allegations in the light most favorable to Grytsyk, there is no basis for the Court to find even arguable probable cause for a disorderly conduct arrest pursuant to Section 240.20(5).

### 3. Vending Regulations

Finally, Defendants argue that even if probable cause did not exist for OGA or disorderly conduct (the offenses for which Grytsyk was actually arrested on April 18, 2016), it nevertheless existed for violations of New York City vending regulations — namely, N.Y.C. Administrative Code §§ 17-314, 20-452 to 20-474.3 and 6 R.C.N.Y. § 2-314, which impose time, place, and manner restrictions on sidewalk general and food vendors. *See* Defs.' Mem. 10-13; Defs.' Reply 1-5. Grytsyk appears to concede that he is subject to these regulations. *See* ECF No. 48 ("Pl.'s Opp'n"), at 3-4; *cf. Bery v. City of New York*, 97 F.3d 689, 697-98 (2d Cir. 1996) (finding the City's licensing requirements for sidewalk art vendors "too sweeping to pass constitutional muster" but stating that such vendors may be properly subjected to appropriate time, place, and manner restrictions). More significantly, Defendants explicitly concede, at least for the purposes of this motion, that Grytsyk is "only . . . restricted from vending when *both* food and general vending are prohibited." Defs.' Reply 2 (emphasis added); *accord* Defs.' Mem. 2, 13. On Defendants' own account of the interlocking regulatory provisions, that is the case at the relevant location Monday through Saturday between the hours of 12:00 p.m. and 11:00 p.m. *See* Defs.' Mem. 13. Pointing to the fact that Officer Morales wrote 1:15 p.m. on the summonses that he issued to Grytsyk on April 18, 2016, *see* ECF No. 42-1, at 2-3, Defendants contend that the "proof" is "irrefutable" that when Grytsyk was arrested "both food and general vending were prohibited." Defs.' Reply 2.

Putting aside the question of whether the Court can rely for the truth on Officer Morales's handwritten notations on the summonses at this stage of the litigation, Defendants' "proof" may not, in fact, be "irrefutable." The relevant box on the summonses did not call for the "time of the offense"; it merely called for the "time." Thus, it is not clear on the current record whether

Officer Morales listed the time of the alleged offense or the time at which he completed the summonses.  If it was the latter, the summonses themselves — even taken as true — are far from "irrefutable" proof that Grytsyk was vending after 12 p.m.  After all, the Complaint alleges only that Officer Morales issued the summonses "[a]t the stationhouse, following [Grytsyk's] arrest" (and perhaps after the seizure of Grytsyk's art and displays as well).  Compl. ¶¶ 48, 52.  Neither the Complaint nor any material that the Court may consider at this stage reveals how much time elapsed between Grytsyk's arrest and the issuance of the summonses.  It follows that whether there was probable cause (or arguable probable cause) to arrest Grytsyk for violation of the vending regulations requires development of the facts and cannot be decided at this stage.

### 4.  Conclusion

In sum, given the limited materials that can be considered at this stage of the case and drawing all inferences in Grytsyk's favor, the Court cannot conclude that there was even arguable probable cause to arrest Grytsyk for OGA, disorderly conduct, or violations of the City's vending regulations.  Accordingly, the Court is compelled to deny Defendants' motion to dismiss Grytsyk's false arrest claim.  Needless to say, however, "Defendants are at liberty to raise" these arguments "anew, after discovery, if the facts adduced" support a finding of probable cause or arguable probable cause.  *Nelson v. City of New York*, No. 18-CV-4636 (PAE), 2019 WL 3779420, at *14 (S.D.N.Y. Aug. 9, 2019).

### B.  Malicious Prosecution

Grytsyk also brings a Section 1983 malicious prosecution claim based on the charges of OGA and disorderly conduct that were filed, and later dismissed, in connection with his April 18, 2016 arrest.  "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and

must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted).  Thus, Grytsyk must plead (1) the initiation or continuation of a criminal proceeding against him; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; (4) actual malice as a motivation for Defendants' actions; and (5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights.  *McKay v. City of New York*, 32 F. Supp. 3d 499, 511 (S.D.N.Y. 2014); *accord Nelson*, 2019 WL 3779420, at *10.  Defendants argue that he fails to plead the lack of probable cause (or that they are entitled to qualified immunity based on arguable probable cause), *see* Defs.' Mem. 16; Defs.' Reply 10 — an argument that the Court has already considered and rejected.[3]  Alternatively, they argue that the claim fails because the dismissal of Grytsyk's charges for speedy trial reasons cannot qualify as favorable termination for purposes of malicious prosecution.  *See* Defs.' Mem. 16; Defs.' Reply 10-11.

Defendants' argument is foreclosed by binding Second Circuit precedent.  *See Murphy v. Lynn*, 118 F.3d 938, 950 (2d Cir. 1997) ("[D]ismissals for lack of timely prosecution should generally be considered, for purposes of a claim of malicious prosecution, a termination favorable to the accused.").  To be sure, the Second Circuit's decision in *Murphy* notwithstanding, Defendants' argument has been accepted by a host of district judges following *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018), in which the Court held that, to prevail on a malicious prosecution claim under federal law, a plaintiff must show "that the

---

[3]     Nevertheless, one additional note is warranted.  Defendants argue that the malicious prosecution claim should be dismissed because there was probable cause (or arguable probable cause) to believe that Grytsyk violated "vending rules."  Defs.' Mem. 16.  That is incorrect, as Grytsyk was not actually charged with a violation of any such rule.  *See, e.g.*, *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) ("[W]hile a false arrest claim fails if there was probable cause to arrest the plaintiff for *any* offense, in the malicious prosecution context, there must be probable cause for the offenses *charged*." (citation omitted)).

underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *See* Defs.' Reply 10-11 (citing cases). And these district judges have admittedly offered some persuasive reasons to question whether *Murphy* can be squared with *Lanning*. *See, e.g.*, *Minus v. City of New York*, — F. Supp. 3d —, No. 17-CV-4827 (VSB), 2020 WL 5646149, at *5-8 (S.D.N.Y. Sept. 22, 2020). In the Court's view, however, these district judges have gotten too far out over their proverbial skis. It is well established that a district court must follow a precedential opinion of the Second Circuit "unless and until it is overruled . . . by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (internal quotation marks omitted), *aff'd,* 854 F.3d 197 (2d Cir. 2017). Thus, "the precise question for this Court is not whether, by its own analysis," *Lanning* supports Defendants' argument, but rather whether *Lanning* "conclusively supports that finding that the Second Circuit or the Supreme Court is all but certain to overrule" *Murphy*. *Id.* (cleaned up).

It does not. First and foremost, the *Lanning* Court itself cited *Murphy* favorably. *See* 908 F.3d at 27 n.6. Second, since *Lanning*, the Second Circuit has four times cited *Murphy* as good law (albeit for more general propositions). *See Olaizola v. Foley*, 797 F. App'x 623, 624 (2d Cir. 2020) (summary order); *Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 22-23 (2d Cir. 2019) (summary order); *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019); *Black v. Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) (summary order). And third, a host of other district judges have adhered to *Murphy* even after *Lanning*. *See, e.g.*, *Alvarez v. Peters*, No. 19-CV-6789 (EK), 2020 WL 1808901, at *1 n.5 (E.D.N.Y. Apr. 9, 2020); *Nelson*, 2019 WL 3779420, at *11-12; *Blount v. City of New York*, No. 15-CV-5599 (PKC) (JO), 2019 WL 1050994, at *4-5 (E.D.N.Y. Mar. 5, 2019). Judge Engelmayer's thoughtful and cogent analysis

in *Nelson* is particularly noteworthy.  The ultimate point, of course, is not that *Murphy* is rightly decided or long for this world; it may not be either.  Instead, it is that the Second Circuit, not this Court or any other district court, gets to decide that question.  And in light of the Second Circuit's own citations to *Murphy*, in *Lanning* and since, not to mention the analyses of Judge Engelmayer and others, the Court certainly cannot say that *Lanning* renders the holding of *Murphy* "untenable."  *United States v. Emmenegger*, 329 F. Supp. 2d 416, 436 (S.D.N.Y. 2004) (Lynch, J.).

In short, Defendants' argument — that Grytsyk cannot, as a categorical matter, establish favorable termination for purposes of his Section 1983 malicious prosecution claim because the dismissal of his charges was on speedy trial grounds — remains foreclosed by Second Circuit precedent.[4]  Of course, "[i]n the event that ensuing case law on this point is adverse to this conclusion, the Court will stand ready, at the summary judgment stage, to reconsider this assessment."  *Nelson*, 2019 WL 3779420, at *12.

## C.  Excessive Force

Next, Grytsyk brings a claim of excessive force against Officer Morales based on his handcuffing during his April 18, 2016 arrest.  "The question" in assessing whether a police officer has used excessive force in handcuffing a plaintiff is "whether an officer reasonably should have known during handcuffing that his use of force was excessive."  *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019).  "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff

---

[4]     An argument could be made that, even under *Murphy*, a plaintiff must affirmatively plead that the termination of his prosecution "is indicative of innocence," 118 F.3d at 948, and that Grytsyk fails to do so.  But Defendants do not make this more nuanced argument; they merely contend that, post-*Lanning*, a speedy trial dismissal does not qualify as a favorable termination as a categorical matter.  Accordingly, they have forfeited any such argument.

signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware

of her pain, or both."  *Id.*  "In analyzing excessive force claims arising out of the use of

handcuffs, courts in this circuit frequently consider (1) whether the handcuffs were unreasonably

tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight;

and (3) the degree of injury to the wrists."  *Gonzalez v. Hirschman*, No. 15-CV-810 (GHW),

2016 WL 354913, at *4 (S.D.N.Y. Jan. 28, 2016) (internal quotation marks omitted).  "It is well

established in this Circuit that claims of excessive force are not established by allegations that

overly tight handcuffs caused minor, temporary injuries."  *Sullivan v. City of New York*, No. 17-

CV-3779 (KPF), 2018 WL 3368706, at *10 (S.D.N.Y. July 10, 2018) (internal quotation marks

and alterations omitted).  At the same time, "[a] court's reasonableness analysis is not limited to

a factual checklist; it must instead be guided by a 'careful balanc[e]' between the 'nature and

quality of the intrusion' and the 'countervailing government[al] interests at stake' under the

circumstances."  *Cugini*, 941 F.3d at 613 (quoting *Graham v. Connor*, 490 U.S. 386, 396

(1989)).

　　　Measured against these standards, Grytsyk's excessive force claim falls short.  The

Complaint alleges only that Morales handcuffed Grytsyk "so tightly as to aggravate a pre-

existing medical condition of [his] right hand, causing him an extremely painful injury and

requiring him to seek medical attention."  Compl. ¶ 47.  But there is no allegation that Grytsyk

advised the officers of his discomfort, verbally or otherwise, or that he remained handcuffed for

an extended period.  Moreover, threadbare and conclusory allegations of injury, without

reference to specific physical injuries, do not suffice as a matter of law.  *See, e.g.*, *Hays v. City of

New York*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *5 (S.D.N.Y. Feb. 28, 2017)

(collecting cases); *Livigni v. Ortega*, No. 15-CV-9454 (CM), 2016 WL 6143351, at *4 (S.D.N.Y.

21

Oct. 19, 2016) (dismissing excessive force claim where the plaintiff merely "allege[d] that his handcuffs were unreasonably tight, and that as a result he suffered a loss of circulation and that his wrists are chronically debilitated" but "d[id] not provide any more information about the extent of his alleged injuries, nor d[id] he allege that [the] [d]efendants ignored a request to loosen the handcuffs" (internal quotation marks omitted)).  Accordingly, Grytsyk's excessive force claim must be and is dismissed.

## D.  Unreasonable Deprivation of Property

Grytsyk also brings a claim for deprivation of property without due process based on the confiscation of his art on April 18, 2016, and August 14, 2018.  *See* Compl. ¶¶ 48, 74, 81.  (The property confiscated in 2016 was returned to Grytsyk after eleven days; the property taken in 2018 apparently remains in police custody despite Grytsyk's having obtained written authorization to retrieve it within ten days of the confiscation due to his unwillingness to execute a release.  *See id.* ¶¶ 49, 75-76.)  The Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  But "the availability of post-deprivation remedies does not defeat a § 1983 claim where the alleged loss results from adherence to an established state or municipal policy."  *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999).  "In addition, even when not sanctioned by an established state procedure, a deprivation performed by a 'high-ranking official' with 'final authority over significant matters' will not be considered random and unauthorized."  *Baines v. City of New York*, No. 10-CV-9545 (JMF), 2015 WL 3555758, at *10 (S.D.N.Y. June 8, 2015) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)).

In light of these standards, Grytsyk's claims fail as a matter of law. He "has not alleged the deprivation of his property was the result of an established state procedure," as opposed to "a 'random and unauthorized' act by" Defendants. *Dove v. City of New York*, No. 99-CV-3020 (DC), 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000) (Chin, J.). Indeed, Grytsyk "fails to allege any facts suggesting the existence of a policy, custom, or practice that directly resulted in the deprivation of property he claims to have endured." *Kneitel v. Rose*, No. 19-CV-3742 (PKC) (LB), 2019 WL 3804678, at *3 (E.D.N.Y. Aug. 13, 2019); *see also Baines*, 2015 WL 3555758, at *10 ("Plaintiff fails to identify an established policy pursuant to which the alleged deprivation took place."). Nor is there any suggestion that any Defendant "is a high-ranking official with final authority over significant matters." *Baines*, 2015 WL 3555758, at *10 (internal quotation marks omitted). Thus, "the alleged deprivation of Plaintiff's property was, as a matter of law, random and unauthorized." *Id.* (internal quotation marks omitted). And "[w]here loss of property was random and unauthorized, courts have found that New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion." *Pierre v. City of New York*, No. 12-CV-9462 (LAK) (GWG), 2014 WL 56923, at *10 (S.D.N.Y. Jan. 7, 2014) (internal quotation marks omitted); *see also, e.g.*, *Baines*, 2015 WL 3555758, at *10; *Dove*, 2000 WL 342682, at *3. It follows that Grytsyk fails to state a claim for unreasonable deprivation of property.

**E. Malicious Abuse of Process**

Next, Grytsyk brings a claim for malicious abuse of process based on the twenty-one summonses that were issued to him between June 1, 2018, and October 12, 2018. *See* Pl.'s Opp'n 15; *see also* Compl. ¶¶ 68-71. A malicious abuse of process claim "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance

of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). "The crux of a malicious abuse of process claim is the collateral objective element. To meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010) (Chin, J.), *aff'd*, 441 F. App'x 24 (2d Cir. 2011) (summary order).

Defendants offer only two arguments in support of their motion to dismiss this claim. First, they "object" on the ground that the "claim . . . was not explicitly pled in [Grytsyk's] Amended Complaint." Defs.' Reply 9. That objection is without merit. Although Grytsyk could certainly have alleged the claim more explicitly, the Complaint states that Defendants "intentionally and *maliciously* harmed [his] business through a pattern of unremitting legal harassment that consisted of *abusing legal process* by repeatedly issuing summonses for non-existent violations of the New York City Administrative Code with the intention, not of enforcing said ordinances, but of harming and interfering with [Grytsyk's] business." Compl. ¶ 81 (emphases added); *see also id.* ¶¶ 68-71. If anything, therefore, it is Defendants who forfeited any arguments with respect to the malicious abuse of process claim by failing to make them in their initial memorandum of law. *See Farmer v. United States*, No. 15-CV-6287 (AJN), 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived." (collecting cases)).[5] Second,

---

[5]    More specifically, Defendants do not make, and thus have forfeited for purposes of this motion, any argument that Grytsyk's malicious abuse of process claim fails because there was probable cause, *see, e.g.*, *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015) ("There has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law."); *Allen v. Leonard*, No. 18-CV-7163 (SJF) (AKT), 2020 WL 4587752, at *8 n.8 (E.D.N.Y. Mar. 3, 2020) (acknowledging the ongoing intra-Circuit split), *report and recommendation adopted*, 2020 WL

Defendants cite *Chepilko v. City of New York*, No. 14-CV-4173 (LDH) (LB), 2016 WL 11263664 (E.D.N.Y. Nov. 28, 2016), *report and recommendation adopted in part, rejected in part*, 2017 WL 1214455 (E.D.N.Y. Mar. 31, 2017), in which the court dismissed Section 1983 claims brought by a "serial illegal [art] vendor." Defs.' Reply 9. But the plaintiff in *Chepilko* did not even allege malicious abuse of process, so Defendants' bare citation to the case, without more, plainly does not justify dismissal.

Although not raised by Defendants, one additional point warrants discussion. The Complaint is not particularly clear about which claims are being asserted against which Defendants based on which factual allegations; instead, it asserts all of Grytsyk's Section 1983 claims against all of the Individual Defendants in a single count. *See* Compl. ¶¶ 29-84. Grytsyk's false arrest, malicious prosecution, excessive force, and deprivation of property claims clearly arise from specific, discrete events, so one can infer the Defendants against whom these claims are brought. By contrast, it is unclear from the face of the Complaint precisely which events are alleged to give rise to his malicious abuse of process claim. In his memorandum of law, however, Grytsyk clarifies that the claim is based solely on the twenty-one summonses he was issued between June 1, 2018 and October 14, 2018. Pl.'s Opp'n 15.[6] The only Individual

---

2537280 (E.D.N.Y. May 19, 2020); because there was no "improper use of process *after* it [was] regularly issued," *Nelson*, 2019 WL 3779420, at *13 (internal quotation marks omitted); or because he fails to plausibly allege an improper collateral purpose, *see, e.g.*, *Demaitre v. City of New York*, No. 18-CV-12403 (PGG), 2020 WL 6048192, at *5 (S.D.N.Y. Oct. 11, 2020) (discussing "[e]xamples of the types of collateral objectives covered by the tort of malicious abuse of process include the infliction of economic harm, extortion, blackmail, and retribution"). Thus, the Court need not and does not address any of these potential arguments.

[6]     Even without this clarification, the Court would have concluded that the Complaint supports an abuse of process claim only with respect to these twenty-one summonses, despite the fact that Grytsyk alleges the issuance of other summonses before and after this period. *See* Compl. ¶¶ 52, 57, 62, 64-65, 80. By Grytsyk's own description, the "campaign of harassment" between June and October 2018 was unlike "anything that had gone before" and was bookended

Defendants alleged to have issued summonses during this period are Sergeant McGurran, Officer Lachmenar, Sergeant Murphy, Lieutenant Khan, Officer DiCandia, Sergeant Schack, Officer Desalto, Officer Mohandes, Officer Espinal, Sergeant Forlenza, Officer Rahman, and Officer Gao.  Compl. ¶ 70.  Thus, to the extent Grytsyk brings malicious abuse of process claims against any other Individual Defendants, such claims must be and are deemed withdrawn or abandoned.

## F.  Municipal Liability

Finally, Grytsyk seeks to hold the City liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).  A plaintiff may establish the existence of an official policy or custom by showing "the constitutional violation was caused by: '(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with municipal employees.'"  *Nelson*, 2019 WL 3779420, at *15 (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

---

by extended "hiatus[es]" during which Grytsyk was largely left alone.  *Id.* ¶¶ 66-68, 80.  Among other things, the allegations in the Complaint do not support a plausible inference that the summonses issued in 2016, 2017, or 2020 were motivated by an improper collateral purpose.

Applying these standards, the Court need not dwell long on Grytsyk's *Monell* claims.

"First, to the extent that [Grytsyk] fails to allege an underlying constitutional violation, his

. . . *Monell* claims also fail."  *Nigro v. City of New York*, No. 19-CV-2369 (JMF), 2020 WL

5503539, at *5 (S.D.N.Y. Sept. 11, 2020) (citing *Lanning*, 908 F.3d at 30).  Because the Court

concluded above that Grytsyk's excessive force and deprivation of property claims fail, it

follows that there can be no municipal liability with respect to these claims.  Second, and in any

event, Grytsyk's allegations of the existence of a City policy or practice are entirely conclusory.

Grytsyk alleges only "[u]pon information and belief" that the NYPD is "determined to harass

[F]irst [A]mendment-protected vendors" and that unnamed "superior officers . . . specifically

instructed" the Individual Defendants to act accordingly.  Compl. ¶¶ 87, 89.  These allegations

do not cut it.  *See Nelson*, 2019 WL 3779420, at *16  ("[T]he [complaint] purports to plead [the

existence of an official policy], but its claims are conclusory. . . .  [I]t does not substantiate any

of [its] broad claims.  As a result, the [complaint] fails adequately to allege any of the above

means of pleading any official policy or custom."); *Baines v. City of New York*, No. 10-CV-9545

(JMF), 2014 WL 1087973, at *3 (S.D.N.Y. Mar. 19, 2014) ("[A] plaintiff must allege facts —

other than those giving rise to individual liability — supporting an inference that the

municipality has an unconstitutional policy.").  Accordingly, Grytsyk's claims against the City

must be and are dismissed.

## CONCLUSION

In sum, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

Specifically, the following claims survive: (1) Grytsyk's false arrest against Lieutenant Khan and

Officer Morales; (2) his malicious prosecution against Lieutenant Khan and Officer Morales; and

(3) his malicious abuse of process against Sergeant McGurran, Officer Lachmenar, Sergeant

Murphy, Lieutenant Khan, Officer DiCandia, Sergeant Schack, Officer Desalto, Officer

Mohandes, Officer Espinal, Sergeant Forlenza, Officer Rahman, and Officer Gao.  The

remaining claims are dismissed.

The Court declines to *sua sponte* grant Grytsyk leave to amend his Complaint to address

the dismissed claims.  Although leave to amend a complaint should be freely given "when justice

so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to

grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.

2007).  The Court already granted Grytsyk leave to amend, ECF No. 34, and he has neither

sought leave to amend again nor suggested that he possesses any additional facts that could cure

the defects in the dismissed claims, *see, e.g.*, *Cuoco*, 222 F.3d at 112; *Fischman v. Mitsubishi

Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11,

2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion

that additional facts could remedy defects in the plaintiff's pleading).  Moreover, the defects in at

least some of the dismissed claims are substantive and, thus, cannot be cured through

amendment.  *See, e.g.*, *Willard v. UP Fintech Holding Ltd.*, No. 19-CV-10326 (JMF), 2021 WL

1026571, at *9 (S.D.N.Y. Mar. 17, 2021) ("A district court may deny leave to amend where

amendment would be futile." (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,

797 F.3d 160, 190 (2d Cir. 2015)).

The remaining Defendants shall file an answer with respect to Grytsyk's remaining

claims **no later than three weeks from the date of this Opinion and Order**.  In addition, the

parties shall appear for a pretrial conference on **April 22, 2021** at **4:00 p.m.**  Although the Court

previously conducted an initial pretrial conference and entered a Case Management Plan, *see*

ECF No. 32, the Court will treat the conference as if it were an initial conference in light of

Grytsyk's subsequent amendment of his complaint, Defendants' motion, and this ruling.  To that end, the parties shall follow the pre-conference procedures specified in the Court's Order of February 24, 2020, including by submitting a joint letter addressing certain topics and a proposed case management plan no later than the Thursday prior to the conference. *See* ECF No. 27.

The Clerk of Court is directed to terminate ECF Nos. 41 and 71 and to terminate Sergeant Matthew Bergen, P.O Christopher Tansey, P.O. Christopher Williams, Captain O'Hara, P.O. Louis Scialabba, P.O. Henry, and the City of New York as Defendants.

SO ORDERED.

Dated: March 22, 2021
      New York, New York

JESSE M. FURMAN
United States District Judge