UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------------------X
                                                :
  PETRO GRYTSYK,                                :
                              Plaintiff,        :
                                                :          19-CV-3470 (JMF)
                 -v-                            :
                                                :          ORDER
  ANTHONY MORALES, et al.,                      :
                              Defendants.       :
                                                :
---------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

  The Court has received the attached letter directly from Plaintiff Petro Grytsyk.  As long as Mr. Grytsyk is represented by counsel in these proceedings, he may submit filings only through counsel.  Furthermore, his counsel remains counsel of record unless and until the Court grants leave for counsel to withdraw pursuant to Local Civil Rule 1.4.  In light of the foregoing, the Court will not take any action the letter received directly from Mr. Grytsyk unless and until counsel is granted leave to withdraw.  Counsel is directed to share and discuss a copy of this Order with Mr. Grytsyk.


  SO ORDERED.

Dated:  April 19, 2021
   New York, New York

               JESSE M. FURMAN
              United States District Judge

# EXHIBIT A

District Judge
Hon. Jesse M. Furman
Thurgood marshall
United States Courthouse
40 Foley Square
New York, NY 10007


Dear judge, in the current circumstances, I appeal to you in order to provide you with information that will allow you to "when justice requires" to correct and prevent the violation of the rights of the plaintiff and to ensure a fair and effective trial:

Nature of Suit Cause 440 Civil Rights - Other Civil Rights 42: 1983 Civil Rights Act; Case Filed: Apr 18, 2019; New York Southern District Court Case #: 1: 19-cv-03470; Grytsyk v. Morales et al; Judge: Jesse M Furman;

Registration documents:

 Plaintiff: street artist: Petro Grytsyk
67-65 73rd Pl apt 2 R
Middle Vlg New York 11379-2545
United States .
Email: peter.art4city.united@gmail.com
Counsel: Alan D. Levine, Esq.
80-02 Kew Gardens Road, Suite 307
Kew Gardens, New York 11415
Phone: (718) 793-6363
Fax: (718) 261-0317

   Exhibit A. Letter drawn up by the plaintiff on March 24, 2021 to an attorney; it is 14 pages; shedding light on the state of the art of 1: 2019-cv-03470 (JMF) in the current phase.

   Exhibit B. 19-cv-03470 Document # 63 ORDER TO SHOW CAUSE misspelled last name

 Exhibit C. Publications in google search engine PETRO GRYTYSK, Plaintiff, v. ANTHONY MORALES, et al., Defendants. United States District Court, S.D. New York .; copy from the website February 8, 2021./https://www.leagle.com/decision/infdco20210210a52 creates pressure on the plaintiff; damages business reputation.

   Exhibit D. Copy Certified 3/25/2021 Document # 81 Filed 03/22/21

   Exhibit E. Copy Certified 3/25/2021 Document # 82 Filed 03/22/21 "write to inform the court that plaintiff has no objection" and Document # 77 02/26/202177 Letter Withdrawing Cause of Action against defendant Times Square Alliance , without prejudice filed by Petro Grytsyk. The documents were submitted without prior warning; discussions; the consent of the plaintiff; The last meeting with the attorney at law was on February 27, 2020, a meeting was scheduled on March 30, 2021 at 1:00 pm to clarify the circumstances and the purpose of not allowing documents to be registered in court without the plaintiff's consent on behalf of the plaintiff.

   Exhibit F. Copy Certified 3/25/2021 Document # 83 Filed 03/22/21 OPINION AND ORDER

   Exhibit G. CERTIFICATE OF DISPOSITION;arrest 04/18/2016 NYSID Number 13456367Y Which is presented to the court and is the basis for the judgment in Document # 83 Filed 03/22/21 OPINION AND ORDER

Attorney: Lucienne Pierre, representing the New York City Law Department, 100 Church Street, New York, NY, 07016, 212-356-2371, has filed a falsified document. Which coincides with that copy CERTIFICATE OF DISPOSITION; arrest on 04/18/2016 NYSID Number 13456367Y which the plaintiff took in court today 03/26/2021 NYSID Number 13456367Y; Date of Arrest / Issue 4/18/2016; COURT OFFICIALS SIGNATURE AND SEAL ENG, J; DATE 03/26/2021 "Date 12/5/2016 Court Action DISM - SPEEDY TRIAL PROVISIONS Jude WATTERS, JOANNE Part C therefore there is reason to believe that the use of a falsified document is a fact established by me today.

What absolutely contradicts the true and fairness of the principle of equal application of the law is abuse of office. The true information presented by the plaintiff undergoing the Hearing H-50 procedure under a polygraph and oath sheds light on the reasons for the participants and the number of victims on the day of the arrest on 04/18/2016.

The copy presented to Exhibit G is a document that Irina Popova and Petr Grytsyk received after the end of the trial at the clerk office in the criminal court in Manhattan on 07/12/2016. This is a conclusion that is true; what the lawyer said the judge and the prosecutor and the accused copy of the CERTIFICATE OF DISPOSITION; Arrest 18/4/2016 NYSID Number 13456367Y Date of Arrest / Issue 18/4/2016 Case Disposition Information: Date 05/12/2016 Court Action DISMISSED - MOTION OF DA Jadge WATTERS, JOANNE Part C. COURT OFFICIALS SIGNATURE AND SEAL TEIXEIRA , K Date 12/07/2016

Details of the arrest were told with an oath and under a polygraph during the Hearing H-50 procedure with the participation of the plaintiff's attorney Irina Popova.

Dear Judge, I inform you that the defense attorney: Lucienne Pierre representing the accused in New York City; Police officers Lucienne Pierre deliberately presented a false document of motivation and the city administration influenced the City Criminal Court in order to hide the judge's fair decision to arrest the plaintiff on 04/18/2016, which would make it possible for a fair jury to fail in court;

Motivation Attorney: Lucienne Pierre in Deceiving the Court Case #: 1: 19-cv-03470; Grytsyk v. Morales et al is that Lucienne Pierre defended New York City and the accused police officers Lieutenant Khan and P.O. Morales who were accused of being 7 Time Square Avenue made a fake arrest based on false accusations on the artist's agenda in April 2016, and artwork was also illegally seized. Case Zhukovsky v. Urso et al.

Obviously, the defense of a repeat offense in the Grytsyk v. Morales and Others case with the same defendants is not a precedent for the Police Department and New York City.

Motivation for New York City to avoid hearing in the Southern District Court

1 Grytsyk vs. Morales et al. / 2019

2 Zhukovsky vs. Urso et al. / 2017

3 Stinson et al. V. New York (Case 1: 10-cv-04228-RWS, Document 338, filed 06/12/2017)

Prosecution case at trial. Cause 440 Civil Rights - Other Civil Rights 42: 1983 Civil Rights Act; Case Filed: Apr 18, 2019; New York Southern District Court Case #: 1: 19-cv-03470; Grytsyk v. Morales et al ; Judge: Jesse M Furman; Sincerely, Plaintiff Street Artist Petro Grytsyk New York March 26, 2021.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                :

PETRO GRYTYSK,
                                                :

                      Plaintiff,          :

                                                  :            19-CV-3470 (JMF)

           -v-                           :

                                                :          ORDER TO SHOW CAUSE

P.O. ANTHONY MORALES, *Shield No. 5056*, et al.,  :

                    Defendants.       :

                                                :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff filed his original Complaint with this Court on April 18, 2019, naming nineteen
Defendants (the "Original Defendants"). Plaintiff subsequently filed an Amended Complaint on
April 7, 2020, naming two new Defendants in addition to the Original Defendants — P.O. Henry
and Times Square District Management Association, Inc. a/k/a Times Square Alliance ("Times
Square Alliance"). ECF No. 35. On May 5, 2020, the Original Defendants moved to dismiss the
Amended Complaint. ECF No. 41. That motion remains pending. Times Square Alliance was
served with the Summons and Amended Complaint on July 3, 2020, and proof of service was
filed on the docket. ECF No. 55. To date, Times Square Alliance has neither answered the
Complaint nor otherwise appeared in this action. No proof of service of the Summons and
Amended Complaint on P.O. Henry appears on the docket.

      On December 11, 2020, Plaintiff filed a "Request to Enter Default" with respect to Times
Square Alliance addressed to the Clerk of Court. ECF No. 58. Counsel is reminded to comply
with the Southern District of New York's ECF Rules & Instructions Section 16.1 when seeking
to obtain a Certificate of Default from the Clerk of Court.

      That said, the Court concludes that any motion for default judgment with respect to
Times Square Alliance should await the resolution of the Original Defendants' pending motion
to dismiss.

      Additionally, it is hereby ORDERED that Plaintiff shall communicate with the Court, in
writing, as to why Plaintiff has failed to serve the summons and Amended Complaint on
Defendant Henry within the 90 days prescribed by Rule 4(m) of the Federal Rules of Civil
Procedure, or, if Plaintiff believes that the Defendant Henry has been served, when and in what
manner such service was made.

      If the Court does not receive any communication from Plaintiff by **January 4, 2021**,
showing good cause why such service was not made within the 90 days, the Court will dismiss

Defendant Henry without further notice.

Finally, Plaintiff is directed (1) to notify Defendants Henry and Times Square Alliance's attorneys in this action by serving upon each of them a copy of this Order and (2) to file proof of such notice with the Court by **December 21, 2020**. If unaware of the identity of counsel for Defendants Henry or Times Square Alliance, counsel receiving this order must forthwith send a copy of this Order to that party personally.

The Clerk of Court is directed to terminate ECF No. 58.

SO ORDERED.

Dated: December 14, 2020
      New York, New York

                                      JESSE M. FURMAN
                                  United States District Judge



No SIM     6:40 PM     28%

‹ Notes

MENU

Home    Browse Decisions
    GRYTYSK v. MORALES

# GRYTYSK v. MORALES

No. 19-CV- Email | Print | Comments (0)
3470 (JMF).

## View Case

*PETRO GRYTYSK, Plaintiff, v. ANTHONY
MORALES, et al., Defendants.*

United States District Court, S.D. New
York.

February 8, 2021.

ORDER

No SIM                    6:40 PM                    28% 🔋

 Notes                                      

# ORDER

**JESSE M. FURMAN**, *District Judge.*

On February 5, 2021, Defendant Times Square District Management Association, Inc. ("Time Square Alliance") filed a motion to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure. ECF No. 71. Under Rule 15(a)(1)(B), a plaintiff normally has twenty-one (21) days after the service of a motion under Rule 12(b) to amend the complaint once as a matter of course.

Here, Plaintiff has already amended his Complaint, ECF No. 35, and several Defendants have already filed a pending motion to dismiss, ECF No. 41. In light of the pending motion and for the sake of efficiency, Plaintiff should not amend his Complaint to address any of the deficiencies alleged by Times Square Alliance that were not previously raised in the earlier motion. Instead, Plaintiff should address in his opposition to Times Square Alliance's motion whether, if the motion is granted on those grounds, leave to amend should be given and specify

                    



No SIM                    6:40 PM                28% 🔋

❮ Notes

to amend should be given and specify
what facts he would allege to address
those grounds if such leave were given.

Plaintiff shall file any opposition to Times
Square Alliance's motion no later than
February 19, 2021. Times Square Alliance
shall file any reply by February 26, 2021.

SO ORDERED.

---

**Comment**

Your Name

Your Email

Comments

Submit                    **1000** Characters Remaining

-3-



No SIM          6:40 PM          28%

< Notes

Leagle.com reserves the right to edit or
remove comments but is under no obligation
to do so, or to explain individual moderation
decisions.

Copyright © 2019, Leagle, Inc.

Disclaimer  |  Terms of Use  |  Privacy Statement  |
Corporate Social Responsibility  |  About Us  |  Contact Us

PETRO GRYTYSK, Plaintiff, v. ANTHONY
MORALES, et al., Defendants.
United States District Court, S.D. New
York.
February 8, 2021./https://www.leagle.com/
decision/infdco20210210a52

- 4 -

Translation from Russia language:

24 March 2021.

Doubting that you had reasons;

the justified need to reject the proposal to form; to submit the collected materials in the indictment of the Time Square Alliance. I am convinced that you are a very experienced professional whom I fully believe; choosing the optimal strategy for effective prosecution, of course, you, as the attorney of the plaintiff, without approval; to drop the charges in court against the defendant's Times Square Alliance for an effective prosecution. I ask you to meet; from February 27; unfortunately there are enough serious reasons to consider the discussion

confidential information with you using email is dangerous and ineffective; example our last meeting at your office on April 27, 2020. Information about Sergeant Jagoda and P.O. Henry has not reached you; only during the meeting, when clarifying the issues of office work, we had the opportunity to correct. And as a consequence, on Monday, March 22, 2021, the judge added the police officer of the 161 Henry unit to the compiled list and fired from responsibility?

I understand that the COVID-19 protocols are a major obstacle and your answer is "Because of the pandemic, I am in the office very seldom. I ask you again, what is it you want to meet about? Maybe we can handle it without a meeting. If we can't, we will make an appointment. "Under the circumstances, it remains to compose this letter with my poor English and perhaps it may be useful in the future. I do not want to explain that I do not fully understand the essence of what is happening, but I have enough reasons to understand everything. Example:

Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15 (a) (2), I'll start with what is for me; the plaintiff today is March 23, 2021 completely unacceptable; what the distinguished judge Jesse M Furman

signed documents on which mine; the plaintiff's surname is indicated with an error; at that time the names of the defendants; and all presented; professionals listed in the proceedings; such documents of the federal court were written without errors;

"When justice so requires" Alan what explains all this nonsense?

I understand that, of course, it is no longer possible to prevent ineffective actions in future legal proceedings by writing a preventive letter; it is obvious that for me the plaintiff today in this format of our communication is extremely difficult to understand in whose interests this or that movement is accepted; I'm being challenged with this on your behalf. Best regards March 24, 2021 I will send this letter via FedEx, please be condescending and excuse any grammatical errors; randomness of the composed text. It remains to wait when you have time; opportunity; necessity; desire to schedule a consultation.

The fact that an emigrant is a naturalized citizen does not speak English well, especially in writing, and this is my reality, of course, I understand, as well as the fact that on March 22, 2021, in a public place in New York, the author's project "Art for the City" which was started in 2008 by Irina Popova and Petro

Grytsyk continues to exist in the same public space; location in the city; for thirteen years in a public place of the city, hundreds of thousands of guests have become acquainted with my work; residents of the city visiting Time Square.

Today, 03/23/21, the project was submitted by only one artist-plaintiff, who in April 2019 went to federal court. (Nature of Suit Cause 440 Civil Rights - Other Civil Rights 42: 1983 Civil Rights Act; Case Filed: Apr 18, 2019; New York Southern District Court; Case #: 1: 19-cv-03470; Grytsyk v. Morales et al ; Judge: Jesse M Furman;) The author's project of genres of art with the direction of creativity since 2015 can be found on the website www.art4city.com. Created by the members; if necessary, an expert may make an assessment for submission to the court; it is not difficult to determine the level of professionalism of the plaintiff; as well as the goals set lawfully.

Petro Grytsyk, a naturalized citizen and resident of the city, is a street artist who, after the illegal seizure of property, has been forced to create works of art in the spray art genre since August 2018; so that, even in such a limited way, he still continues to realize his profession, demonstrating his work in the street art industry in the above-mentioned author's project "Art for the City". The author of the works was born in 1968; the son is 24 years old and he grew up in the city of New York; of course I understand that the priority for every emigrant is and will be the desire for free choice in the profession; the right to sell; goal-setting for every first generation of city residents will always build their American Dream.

Alan, since 2016, you have witnessed how your client, street artist Petr Grytsik, overcomes standard difficulties. Of course I understand and am convinced that in the history of families that are of several generations; for generations living in their beloved city has always been present and will be present just such a period. Therefore, since 2008 and March 22, 2021, I have been fighting and disagreeing with false accusations in the administrative and criminal city courts; the only decision of the OATH court to falsely accuse the artist; Petro Grytsyk without the help of a lawyer, completed the necessary documents; using the right of appeal;? challenged the decision of the judge; an NYPD attorney failed to prove the charges were legitimate; was not present at all in the defense. Alan I do not need an answer "when justice so requires" I have defended and will defend my reputation; citizen of a city dweller; professional street artist; author of a project who has the right to legally be present in a public place;

Because I disagree and will never agree to be on a pink colored piece of paper; with the name of the department; number; police officer in NYPD uniform; only of their own free will; by order of the boss; established quota; this low-skilled city police officer without reason; thanks; false accusation in a subpoena; using uniforms and confidence; a respected professional and honest judge; in a New York City court; by drawing up documents about the crime that took place; taking the oath before the court; pursued to convince the administration of the court by the city judge; become an unwitting accomplice in maliciously falsely accusing an innocent person; In action; practice with impunity; use the repetition of false accusations; guided by the interests of two stores and one charitable organization; fulfillment of quotas; only of their own free will; by order of the boss; established quota; this low-skilled city police officer without reason; thanks; false accusation in a subpoena; using uniforms and confidence; a respected professional and honest judge; in a New York City court; by drawing up documents about the crime that took place; taking the oath before the court; pursued to convince the administration of the court by the city judge; become an unwitting accomplice in maliciously falsely accusing an innocent person; In action; practice with impunity; use the repetition of false accusations; guided by the interests of two stores and one charitable organization; fulfillment of quotas;

arrests of innocent artists; by illegal confiscation of property, this number is growing; The falsely accused street artist Petro Grytsyk for thirteen years in a public place in the city from uniformed officers receives a summons to the criminal and administrative courts of the city. And the attorney in the proceedings applying "when justice so requires" is New York City excluded from prosecution in federal court?

Representing the defense of their rights, Irina Popova and Petro Grytsyk refused to believe that influencing the abolition of forcing them to abandon the natural right of a citizen of the country to build their American Dream in their beloved city could be falsely accused using the judicial system based on the United States Constitution. To the honor of all respected judges of the city

arrests of innocent artists; by illegal confiscation of property, this number is growing; The falsely accused street artist Petro Grytsyk for thirteen years in a public place in the city from uniformed officers receives a summons to the criminal and administrative courts of the city. And the attorney in the proceedings applying "when justice so requires" is New York City excluded from prosecution in federal court?

Representing the defense of their rights, Irina Popova and Petro Grytsyk refused to believe that influencing the abolition of forcing them to abandon the natural right of a citizen of the country to build their American Dream in their beloved city could be a false accusation using the judicial system based on the Constitution of the United States.

To the honor of all respected judges of the city

demonstrating professionalism and impartiality during each meeting on numerous charges of violating the laws of the City of New York, street artists Irina Popova and Petro Grytsyk thanks; opportunities for equal application of the law; legal proceedings procedure for granting protection; representing each other without a defense lawyer; from false accusations; were able to install; all subpoenas that were maliciously handed by PBMS Time Square Unit 161 police officers from 2008-2020 in violation of the laws of the City of State and Country Police Department.

Therefore, "when justice so requires" it must be presented.

Alan, I am grateful to you for sending a letter with a response to your home address; it was wise advice not to accept a $ 150 outrage letter for each NYPD subpoena addressed to Irina Popova and Petro Grytsyk Today it is obvious in light of the decision taken by the judge in the United States District Court Southern District of NEW YORK:

it is a real-life example of how and why New York City citizens and residents protect their reputations with guaranteed civil rights and freedoms. For these residents in the same court, the respected judge said "justice requires" materials - the prosecution; facts and procedure of the legal proceedings; conclusion; result; formulated, of course, not by an emigrant, Petro Grytsyk a poorly fluent English citizen, a little meaningful citizen, a street artist, a resident of the city who has been working for thirteen years on one and in the same place creates works of art presenting his work in a project called "Art for the City"

The fact that this is an inconvenient reality for the defense and the court decision, I understand this, and as a plaintiff who, since April 18, 2019, has been asking many judges "when justice so requires"?

United States District Court Southern District of NEW YORK

"This civil rights class action is the paradigm of change and progress achievable in a society undergirded by the rule of law," the judge wrote. "The rights of all citizens will be fortified through what has been represented as the largest settlement of Fourth Amendment claims in New York City history."

The U.S. Constitution's Fourth Amendment protects people against unreasonable searches and seizures.

Joshua Fitch, a lawyer for the plaintiffs, said in an interview that the litigation has led to better policing and greater NYPD communication with the public."

/Case 1:10-cv-04228-RWS 10 Civ. 4228 (RWS) OPINION Document 338 Filed 06/12/17 Page 1 of 31

Plaintiffs SHARIF STINSON, e t a l . ,,

- against -Defendants THE CITY OF NEW YORK, et al /

 Of course, professional lawyers representing the defense in the same court; respected professional lawyers Lucienne Pierre, Stephen M. Suhovsky, Adam I. Stein really understand everything that happens in Time Square; do their job; follow corporate ethics; and from the compiled indictment, they create a reality that is comfortable for the court; look for complaints drawn up by an attorney on behalf of the artist; an accusatory statement; in the added complaint by respected professional attorney Alan D Levin its comfortable reality Example of plaintiff's discrepancy and document defense of the Manhattan Criminal Court decision to arrest on April 18, 2016; expedited proceedings or petition from the prosecutor motion DA dismiss there is no need to capitulate the grammatical inadequacy of the text; the accusations are considered reality in one of the courts;

 which takes place in Time Square. Alan to interpret ignoring the content of what is really happening in a federal judge such a position of the defense is expected and normal; Despite everything, I am sure that everyone is familiar with what is actually happening in Times Square and only indirectly, based on the materials of the plaintiff's complaint in the above office work, give results that can be achieved. Agree, the city is innocent because they ignore they do not indicate they hide the plaintiff's appeal to replace the original decision of the city's criminal court in the federal court.

Of course I will translate 29 pages and try to understand what motives and principles were involved in drawing up such a document; on the basis of my short-term experience in providing self-defense in courts, I understand how difficult and responsible the work of a lawyer representing the defense from the prosecution is; and of course I understand what efforts Irina and I needed to prove the false accusation and perjury, but we were able to; the texts of the OATH court decisions are informative and the nuance that these are documents of the city of New York.

Alan, you are a professional lawyer with many years of experience in front of your eyes since 2016, a really critical mass and the number of affected artists is growing.On the example of Pyotr Gritsyk and Irina Popova in 2008-2020, you can understand that this is due to the fact that police officers of PBMS Time Square Unit 161 are on the subpoenas have presented and continue to present motivated malicious false accusations in the courts of the city and the control function and responsibility of the city is obvious.

I assure you that in thirteen years

practice and communication in a public place from my own experience I was convinced that most of the worthy police officers sergeants lieutenant captains men and women in PBMS MTS MTN uniforms are residents of the city who do their job professionally. An example of how two officers who were present on April 18, 2016 under the command of the defendant Lieutenant Khan, after my arrest by Morales officer, handed Irina Popova a leaflet with the CCRB phone number and strongly recommended to call immediately at the indicated number

phone to report that the arrest of her husband is illegal and what is issued to her; your name is Irina Popova, the summons to the city's criminal court does not have a mark confirming the seizure of property; works of art that had really just been taken away by a group of officers under the command of Lieutenant Khan. Alan it is a reality that all the street artists present in the public place on April 18th were handed over to the PBMS police officers of unit 161, and the property of two artists was arrested; one artist was arrested; on the basis of the document presented to officers by Irina Popova, the decision of the OATH court in favor of the artists, criminal subpoenas were illegally issued.

The fact that my wife is also an emigrant, naturally frightened and confused crying female artist who is eighteen years younger than her husband in age, called 911 and registered her complaint with the CCRB; asked the question where the arrested person was being taken; after the confiscation of the property of the plaintiff and her personal went to the address in the MTS site; because the defendant Lieutenant Khan gave the answer; the arrested person and all the crushed property will be taken to this particular area. In fact, the plaintiff was taken to another MTN police station and Irina Popova waited all night under this station in order to find out what was the fate of the arrested husband and what happened to her works of art by the arrested officers. Having experience of two years of service in the army, I understand what it means to subordination and subordination what a group of city police officers did on April 18, 2016, the quality of communication; winking and macho; lack of included walkie-talkies; complete disregard for the document presented by the artist Irina Popova; decisions of the OATH court; whose text is unambiguous; a location at 701 7th Avenue legal for the First Amendment vendor; if the artists comply with the law of height and the location of the display in a public place; I can confidently assert that it was a group of bad faith motivated with conspiratorially planned characteristics of the actions of individual executors of individual PBMS officers of a special unit; Time Square unit 161 commanded by Lieutenant Khan. Alan that this is corroborated by the plaintiff's videotapes; the victims themselves who testify; that for years the same officers have been demonstrating low professional skills in a public place; not qualified actions; illegal motivation; it made it possible for Lieutenant Khan to systematically apply the practice of false accusations against innocent citizen street artists; flagrantly violate the fourth amendment of the constitution; four intentional seizure of property of the plaintiff fact; the number of victims is not only the plaintiff; example In the arrest of 2016, the arrest of the property and of the artist Bogdan Zhukovsky himself on the pretext of a false accusation;

under the command of the defendant Lieutenant Khan; the arrest documents were issued to P.O. Urso despite the fact that all the videotapes and witnesses present actually saw that the defendant P.O Morales handcuffed a falsely accused innocent street artist.

The reality that defense lawyers are doing their best to hide from the respected judge of the Southern District of New York is that in the drafted court documents personally signed subpoenas to the criminal and administrative courts of the city there are enough examples of how exactly these accused city police officers demonstrated their professional incompetence by maliciously planning and repeating crimes ...

Carrying out criminal orders and ignoring court orders, individual police officers of the city use uniforms and official positions to achieve conspiracy participants motivating them with personal benefit, whose goal-setting is obviously to build financial gain and a successful rapid career with a reputation as one of the best in the police department. Don't need to have legal education to compare the salaries of such police officers legality of benefits and career growth from 2008-2021 to understand that due to the motivation and use of illegal practices, such police officers of the unit

161 build personal careers receive promotions, increase overtime and salaries, offering city residents and society an impressive statistical number of subpoenas to the city's criminal and administrative courts as evidence.

Grytsyk v. Morales et al 1: 2019-cv-03470 (nysd) Of course, respected citizens, professional lawyers Lucienne Pierre, Stephen M. Suhovsky, Adam I. Stein understand the reality described above and when they draw up documents representing the defense in the court of Grytsyk v. Morales et al 1: 2019-cv-03470 (nysd) and when sworn in court they assure that in a public place; Time Square; for the actions of uniformed men and women working for the New York City department, New York City itself is not responsible. I am afraid to even imagine the actual statistics of false accusations.

In front of my eyes, during a group attack on 11/26/16, two women artists, one of whom is my pregnant wife, police officers of unit 161 armed in uniforms empowered men performing their duties one of which is the obligatory protection of the property of residents of the city on the orders of the defendant Captain O'hare who obliged to monitor the execution by subordinate officers of what everyone in the city understands by the slogan "courtesy professionalism respect" maliciously issued subpoenas to all the artists present OATH subpoenas with malicious false accusations in the fine section indicating $ 500; my pregnant wife, police officers of unit 161, armed in uniform, men in power performing their duties, one of which is the obligatory protection of the property of residents of the city on the orders of the defendant Captain O'hare who is obliged to follow the execution

subordinate officers, what everyone in the city understands by the slogan "courtesy professionalism respect", maliciously issued summons to all the artists present at the court OATH malicious false accusations in the $ 500 fine section;

Alan— Not a single judge before whom I had to defend myself since 2008 -2020 considered that the charges against the plaintiff were justified.

therefore, I firmly believe in the guarantee of the rights and freedoms of my homeland. I have no doubt that the city administration and the City Police Department are obliged to have an effective and binding control mechanism to prevent the thirteen years of abuse of power by the defendants; Lucienne Pierre, unable to answer the merits of the charges. This failure demonstration of motivation only convinces me that the side of the defense of police officers and the city is, first of all, a respected professional lawyer who will not be able to scare me to convince or agree; example in the mediation process Lucienne Pierre, offered me a document that was drawn up with the participation of the Time Square Alliance. Alan, of course, I understand her corporate professional ethics, what is the level of responsibility before the court for the documents presented.  Uncertainty is a smart decision to change defense attorney Lucienne Pierre to Brooklyn Assistant Attorney Stephen Matthew Suhovsky.

The positive thing is that there is still a legal way for me to be present in a public place. It is negative that this is an ineffective demonstration of the Art for the City project and sad that it is the result of systematic and malicious crimes committed by PBMS police officers of Unit 161. An important but neutral result of the struggle for the right to realize oneself in the profession in the project "Art for the City" in a legal public place is that since 2008 I have been forced to defend myself against false accusations in criminal and administrative courts, taking into account that I was born in 1968 that artists husband and wife under constant pressure of stress are obliged and of course were able to achieve equal application of the law. Appellant's appeal in 2019 Petro Grytsyk v NYPD is an example. In the OATH Administrative Court, this appeal passed without defense NYPD legal professional attorney Smith was unable to the appellate court to present existing laws and orders from city departments to defend the 161 police officer who fraudulently charged the plaintiff. As a result of the appeal decision of the OATH court and all previous decisions, the texts of which, compiled by respected judges from 2008-2020, rightly make it possible

attorney representing prosecution in federal court Case #: 1: 19-cv-03470; Grytsyk v. Morales et al; Judge: Jesse M Furman to claim that defense attorney Lucienne Pierre's position, based on the submission of a false document from the city's criminal court, is unfair manipulation in the Grytsyk v Morales case, motivated by the previous defense in this court of the previous case of the defendants Lieutenant Khan and the police officer Morales Zhukovsky v Urso et al.

At the mediation process, who was present, the plaintiff said that

it is necessary to take into account this important circumstance. An example of malicious revenge and the ongoing practice of false accusations - text sent to me From: Bogdan Zhukovsky <zhukovsky.bogdan@gmail.com> Date: February 24, 2019 at 10713750 PM EST

To: peter.art4city@gmail.com

Subject: Arrest details.

I had an arrest on 7th ave between 47 & 48 streets

For me, this indicates that despite the settlement agreement between the parties to the conflict with the participation of Lucienne Pierre, which. Agreed established compensation and voluntary closure of proceedings Zhukovsky v Urso et al. Unit 161 police officers continue to practice malicious systematic harassment; drafting false accusations in subpoenas on the basis of which works of art - property of street artists in a public place of the city are illegally seized; flagrantly violating the fourth amendment of the constitution. As an experienced professional defense lawyer with many years of experience and practice in defending civil rights in the city courts, of course, you should choose the strategy and form of accusation. For my part, I understand that:

STATED FACT

As a result of the practice used by the police officers of Unit 161 for thirteen years, the street artist was maliciously and illegally deprived of the opportunity to

to create works of art in a public place of the city; freely and fully represent the genres of the author's project "Art for the City"; based on the results of decisions of criminal and administrative courts in the

period from 2008-2020, all subpoenas with malicious and false accusations against the artist were canceled;

the practice of perjury under oath by the police officers of Unit 161 took place;

deliberate drawing up of documents with perjury in the credentials and administrative courts and this is a deliberate abuse of power; as a consequence, malicious disregard for previous decisions of these courts in favor of a group of artists working on 7 Avenue; in April 2016, a sustained attack on street artists by a group of officers from Unit 161 led by the defendant Lieutenant Khan; false accusations in subpoenas property false arrests of two artists Bogdan Zhukovsky and Petro Grytsyk; injury to the right hand of the plaintiff during the arrest on April 18, 2016: on the basis of a false charge, a subpoena to the criminal court dated 04/18/16, the seized property of the artist Irina Popova without a proper mark in the subpoena stating that the property was crushed, malicious and illegal confiscation of the author's works of art ; property illegally seized from Irina Popova

a voucher issued at the MTN police station in the name of the plaintiff; on the night of April 18-19, 1916, Irina Popova calls the CCRB about the theft of property, stands until the morning under the MTN police station to find out where her property is, presenting an issued subpoena to the criminal court in which there is no mark on the seizure of works of art on 04/18/16; four times perjury in the plaintiff's subpoenas was the pretext and reason for the illegal seizure of property; The video recording of which

made by the artist during the group attacks of police officers of unit 161; this is the ability of the plaintiff to demonstrate the validity of the charge against the CCRB; the plaintiff showed the investigators how in what place and who violated the civil rights of the victims; Operation Order 32 indicates the category First Amendment Vendor and due process of seizure of property are all indicative that the defendant police officers are systematically and the malicious ones violated the rules and orders of the Police Department; the exact number of artists affected by the practice of false accusations in subpoenas and the number of illegal seizures of property in Times Square is difficult to imagine; videotaped April 18, 2016, a group of police officers from Unit 161 led by Lieutenant Khan only on; 7 Avenue maliciously attacked streetartists; the submitted documents testifying to the legality of the time and place for the First Amendment vendor category were deliberately ignored defendants since; subpoenas were handed to the criminal court with false accusations of violating the laws of the city to the entire group of artists present, and two of them had their property illegally arrested; video footage made by the plaintiff during the procedure for the return of confiscated property at the MTS police station in August 2018; deliberate sabotage of the property clerk officer took place; the next day to the plaintiff, Sergeant Marphy, executing Lieutenant Khan's order, supervised the arrest and transportation of the illegally crushed property; reported that according to the captain of PBMS Unit 161, Hershey's Store, NFL Store, Time Square Alliance - strongly opposed the street artist to the plaintiff to continue to be present at a specific public place in the city and this is the reason that the officers of Unit 161 are now following the law; documents that confirm the illegality of the third seizure of property; no violations of the city law were brought against the plaintiff in the property clerk and Sergeant Marphy; Sergeant Marphy maliciously obstructed the return of the property to the plaintiff; the plaintiff's objection that the decision of the administrative court OATH and the judge's order for the officers subdivisions are documentary confirming the legality of the plaintiff's stay in the above place; justified by the laws applicable to the First amendment Vendors category; Defendant Sergeant Shack insulted plaintiff pleadingly asserted that scheduled locations and times for Food Vendor Artists should not be present on

Seventh Avenue; threatening the plaintiff, said that we do what we want; the plaintiff requested a meeting with the Temony inspector; invited Sergeant Marphy to show a book with a list of laws and documents necessary for the effective work of officers in the MTS so that two sergeants could be convinced of the groundlessness of their position; as this book points out that the First Amendment, under its own category with a timetable of 2-314 and an included list for the category Food Vendor from 8 am to 12 am and from 2 pm to 7pm, entitles artists to be in this public place of the city; Sergeant Shack Sergeant Marphy With Insults And Threats

abusing power, accused the plaintiff of the fact that the submitted documents are forgery; threatening to arrest an artist who had permission to return illegally crushed property, was violently physically pushed out of the police station; prohibiting entry into the interior of the MTS police station; Sergeant Marphy advised that if or when each time the artist is present at the site, subordinate officers of Unit 161 will serve subpoenas and seize the plaintiff's property; on that day to the plaintiff in a public place of the city on the sidewalk at 701 7th avenue between W47 street and between W48 street defendant P.O. Mohandes served a subpoena in which he maliciously perjured the city's law; the CCRB investigation proof a violation of the law by Sergeant Shack; police officer Rahman; The plaintiff wrote a letter explaining the incident to the captain of the Temony inspector at MTS; the letter was taken to the MTS police station inside the station from the plaintiff, the letter was taken by an officer on the front desk;

Alan thinks it is necessary to insist on the right to present to the jury all the materials that we have at our disposal.

Grytsyk appeal v NYPD 2019 and DA motion to dismiss arrest 04/18/16

Having gained experience of self-defense against false accusations in the city courts, I understand that the real attitude to the presented indictment is Case #: 1: 19-cv-03470; Grytsyk v. Morales et al have

registered with Southern District Court

1. Grytsyk v Morales et al./2019

2. Zhukovsky v Urso et al./2017

3. Stinson et al. V. New York City(Case 1:10-cv-04228-RWS Document 338 Filed 06/12/2017)

Obviously, since 2008, the plaintiff has been creating art in a public place in the city on the sidewalk at 701 7th Avenuebetween W47 Street and between W48 Street and this is a legal and legal place for the First Amendment vendor category.

You know that the first arrest of property on the basis of perjury in the subpoena was made in 2016 by Irina Popova and Petro Grytsyk k; there is a detailed presentation using a polygraph on the Hearing H-50 procedure.

NEGATIVE EXPERIENCE:

Since 2008, systematic false charges in criminal and administrative courts;

since 2016, two false arrests of Petro Grytsyk; injury to the right hand;

four illegal art confiscations;

willful destruction of works of art and display belonging to the plaintiff; selective application of the law;

discrimination; systematic insults and threats; planned and targeted attacks; conspiracy; physical attacks; forced presence in an atmosphere of persecution and stress; deliberate restriction of freedom of creativity since April 2016 has to worry and protect his wife and continue to create a work of art for the author's project in an atmosphere of anxiety and permanent aggression On 11/27/16, the pregnant wife was handed a subpoena with a false accusation with a fine rate of $ 500 2017 after Hearing H-50 miscarriage; loss plaintiff wife street artist pregnancy defense in a criminal court against false charges resulting from a second false arrest in August 2016

an MTN police officer indicated in a compiled arrest report that he had an injury that he received during the arrest when the artist was opposed; the false and deliberate accusation of the charity manager Katerina Varseyeva and the police officer of the plaintiff pouring hot coffee in the face and wounding the police officer during the arrest allowed the plaintiff's second fake arrest in August 2016 with DA motion dissmise

POSITIVE EXPERIENCE:

 The number of visitors to the Art4City project is growing online and in a public place; final understanding of what project is possible to implement and will be needed by everyone and every city; finally fell in love with the inhabitants and with this great city; I continue to work in a public place at 701 and try to create the highest quality works of art successfully defend myself in city courts I have the opportunity to formulate a charge in federal court two established false arrests in 2016 Dessie's DA motivation to restore the reputation of the author's project that I have been presenting in a public place for thirty years.

Allow me to apologize for the disturbance caused to you on February 27, 2021. In the current circumstances, I desperately need a meeting.

The fact that we are talking about the wrong spelling of my surname, for example, document 72 Filed 2/02/21 plaintiff Petro Grytysk I told you. Grytsyk v. Morales et al Court Docket Sheet

Southern District of New York 1: 2019-cv-03470 (nysd)

I take into account that COVID 19 is also not an unimportant obstacle to the meeting, and therefore you cannot find the time from February 27 to March 22. For me, this is evidence that you do not understand that I do not need an hour meeting to retell the content of a conversation with Attorney Lucienne Pierre or Stephen Matthew Suhovsky, I do not need an answer or receive an answer from the day of our last meeting on February 27, 2020. 2016 Irina Popova and Petro Grytsyk separately, I am not asking why you didn't inform in advance that the charges against Time Square Alliance would be dropped. Alan, I was born in 1968 and my son is 24 years old, you cannot ignore the fact that for the third year since February 25, 2018, planning is necessary to fulfill the obligations assumed in three countries. That when planning the next months of my life, due to my age, I can understand that justifications such as COVID 19 or the Federal Court in New York not with my last name in my particular case are generally untenable. I had to reject your offer to contact the press due to the serous risk, since the threats to Irina's parents and my parents from the Charitable Children's Fund were serious. homeland security office in 2017 compiled a list of 35 people who made contracts until 2025 with the fund and companies of Efremov. Selling thieving works of art in Time Square for a contract and permits, only Roman under the S-24 contract of

2013 handed over a $ 40,000 contract signed by the director Efremov work permit manager Varseeva. At the interview at the Homeland Skurity office, the investigator was Irina Ya I Roma. On MTN, Detective Donovan had Irina Poma and me for an interview in 2016. The attack was carried out on Roma in a public place of the city on 6th Avenue This is not only an organization with police officers in August 2016 of the second fake arrest with a fake report claiming that a police officer was injured during the arrest of the artist. It took time for the law enforcement system of the three countries to solve the problem. Kateryna Varseyeva, a citizen of Ukraine who accuses me, is a citizen of Ukraine, director of the foundation, Anatoly Efremov, a citizen of the Russian Federation.

including my three works of authorship and of course I understand that having serious debt obligations is the only opportunity for them. Alan in all difficult circumstances, I do my best to balance what is happening in the first place. I always go through difficulties successfully. For example, Richel made her choice by falsifying documents. I didn't have it, so I took lawyers in two countries and represented myself in the USA myself. I have informed you that the two-year commitment to Suprem Court Queens expired on February 2, 2021. Richel has achieved nothing other than rehearsal destruction and inconsistency of advocate ethics. The motivation for the money for the divorce is untenable, but obviously

that by falsifying notarizing documents, she sought to eliminate the possibility of a joint application to the court by Irina Popova Petro Grytsyk on the points that Irina and I drew up on February 17, 2018.

On March 23, it was reported that the city was excluded from responsibility, despite the fact that it was the police officers of Unit 161 in Times Square in the criminal and administrative courts who drew subpoenas for thirteen years, perjured under oath, falsely accused artists of whom, on the basis of charges of violating the laws of the city be able to make illegal arrests of property fake arrests of the accused. Applying practice and reputation

police officers is a management tool applied to artists present in a city's public space. The victim through systematic threats and harassment during 2016-2020 guaranteed the non-compliance with the city's laws; such a practice guaranteed the fulfillment of the motivational goals of organizations and shops near which artists were present on the sidewalk. Promotion and fulfillment of quotas for the effective work of police officers are of course a component. The applied practice of the police officers is the persecution, the deliberate and malicious deprivation of the citizens of the city of the rights guaranteed by the Constitution. The obvious fact is the number of documents as well as victims of the applied practice is huge.

Obviously, a creative person is a street artist who fulfills the duties of a citizen of a country who, for implementation in his chosen profession, fulfills the laws of the city, enjoys freedom of civil rights. For thirteen years, he has been demonstrating the author's project Art for the City, creating works of art in a public place, believing that the successful development of society, the greatness of the city depends on the number of freedoms provided to talented citizens. After the translation from English of a 29-page text to a non-lawyer, the plaintiff, a street artist, on March 23, 2021, that the case was; on the merits of the charges will be partially rejected partially accepted for consideration in the Federal Court and on Thursday you need to decide on my behalf? And what exactly is Alan behind the preparation of this letter do you want to get from me for these thirty years of the implementation of civil and constitutional rights that are guaranteed to every citizen of the country? Do you believe surrender due to poor English and COVID-19 is acceptable professional and balanced position of the prosecution.

Please schedule a consultation. I need to understand what who is capable of presenting what accusations in open proceedings. The fact that in the proceedings of the US District Court, Southern District of New York as a result of the COVID-19 pandemic, the plaintiff must wait until Pecer publishes the documents that are filed on behalf of Petro Grytsykk, I understand. As well as the fact that 29 pages can probably be translated from English overnight, but the words from the document of this respected judge help me to understand what is happening:

Skilled and dedicated counsel for the parties, aided by a highly experienced and pragmatic mediator, have reached a resolution beneffitting all concerned. The strongly held positions, vigorously litigated and, initially, diametrically opposed, have been illuminated by facts developed in the discovery process and resolved. Thanks to the skill of those involved and a concerned administration, those injured will be compensated, police procedures will be clarified and strengthened, and the rights of all citizens will be fortified through what has been represented as the largest settlement of Fourth Amendment claims in New York City history.

......To that end, named Plaintiffs Sharif Stinson, Ryburn

Walkes, Gary Shaw, Michael Bennett, Chanel Meausa, David

Thomson, Jeremy Thames, Leander Griffin, Ricardo Jones, and Victor Breland (collectively, "Class Representatives" or "Plaintiffs"), on behalf of themselves and the Class1, have moved for orders (i) granting final approval of the proposed

1 The Class is represented by Cohen & Fitch, LLP, Jon L. Norinsberg, Esq., and Quinn Emanuel Urquhart & Sullivan LLP

(hereinafter, the "Class Counsel"). 1

Case 1:10-cv-04228-RWS Document 338 Filed 06/12/17 Page 3 of 31

settlement (the "Settlement") with the City of New

Raymond Kell y ("Kelly") , the former Commissioner of the New York Police Department ("NYPD"), and unnamed New York City Police Officers (collectively, "Defendants") ; (ii) the award of service payments to the Class Representatives; and (iii) the granting of attorneys ' fees and expenses .

....Federal Rule of Civil Procedure 23(e) provides that "claims, issues , or defenses of a certified class may be settled , voluntarily dismissed , or compromised only with the court's approval. " Fed. R. Civ. P. 23(e) .

What other action document of a voluntary decision without notice and on my behalf without my full understanding you will need to submit for a fair trial you still need to submit? In the current situation to achieve balance, there was enough time wasted to comfortably defend the accused of the crimes of the accused officers of the Time Square 161 police unit.

your time or to convince me that the city of New York is not responsible because the text of the accusation convincingly or unconvincingly presented the reality of what is happening in the city in Time Square; that the facts provided are fragmentary; and that this is a difficult task, given COVID-19, is possible only when the opponent realizes that this is my profession, my thirteen years of life and my invaluable thirteen years of life experience. In the public space of the beloved city of New York.

Yours faithfully kvass, your client, street artist, injured plaintiff, citizen of the country and residence of the city of New York, naturalized emigrant Petro Grytsyk, the author of the Art4city project, which has been presented in the public space of the city at 701 7th Avenue between W47 and W48 streets in Times Square since 2008.

The result of this proceedings in the same court does not allow me to understand the 28 sheets that you sent me on March 23, 2021.

« On April 14 , 2017 , the Settlement , service granting of attorneys ' 2017, a Fairness Hearing was held pursuant to Fed. R. Civ. P. 23(e) (2) , at which time counsel from both sides spoke , objections to the proposed Settlement were heard, and the motion was marked fully submitted. Payments to fees and expenses .Representatives , and (Dkt. 324 . ) On May 24 ,....

I need a consultation about which I am asking you from February 27, 2021

I wrote in email to you:

.....Thanks for the info, I'm only familiar with # 82 https://www.pacermonitor.com/public/case/27871374/Grytsyk_v_Morales_et_al Mon 22.03 22:01 pm

The last content consultation between us was on February 27, 2020 at your office; my request for a meeting after # 77 02/26/2021 was on February 27, 2021 do you have the opportunity to meet.....

Alan let me understand to balance and effectively present the accusation in one short mediation without preparation and consultation, I tried to do it; It is now evident for a judge in the US Court Southern District of New York 1: 2019-cv-03470 (NYSD) Grytsyk v. Morales et al with your help I can. You are a professional and cannot obey a conveniently crippled one; distorted reality; which is searched for in your text; described in the compiled text; already the second lawyer for the defense of the accused; of the accused is justified in the fact that they are practicing a malicious thirteen year crime using false accusations in subpoenas and administrative courts seizing property fake arrests deliberately abusing the power vested in defendants in city uniforms in a New York City public space towards a large group of street artists injured. I will send this text on Wednesday 24 March 2021 by Email and FedEx

With the hope that you will have the opportunity to familiarize yourself with it before the procedures of meetings and your presence in court, I understand that this is a very complex and obscured complex litigation, therefore I try to be as useful as possible in your work.

See you have a nice holidays on Passover.

With respect,

Street Artist Petro Grytsyk art project "Art4City"

March 24, 2021 New York City.

*P. Grytsyk*
*PETRO GRYTSYK*

CARMINE J. PALERMO
Notary Public, State of New York
No. 4769339
Certified in Rockland County
Commission Expires 12/9/2022

State of New York
County of New York
Sworn to me this day

03/24/2021

Art4city

Street Artist: Petro Grytsyk

P.O. Box 790175

Middle Village, New York 11379-0175

United States

Email: peter.art4city.united@gmail.com



THE CITY OF NEW YORK

# LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

**JAMES E. JOHNSON**
*Corporation Counsel*

**STEPHEN M. SUHOVSKY**
*Senior Counsel*
Phone: (212) 356-2371
Fax: (212) 356-3509
ssuhovsk@law.nyc.gov

March 22, 2021

**VIA ECF**
Honorable Jesse M. Furman
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Application GRANTED. Defendant Officer Henry
is deemed to have joined in the pending motion to
dismiss filed by the City Defendants.
SO ORDERED.

March 22, 2021

Re:    Petro Grytsyk v. City of New York, et al.,
         19 Civ. 03470 (JMF)

Your Honor:

      I am a Senior Counsel in the office of James E. Johnson, Corporation Counsel of the City of New York and the attorney assigned to the defense of the above-referenced action. The undersigned respectfully writes to request that Police Officer Sean Henry ("Officer Henry"), in lieu of filing an answer to plaintiff's Amended Complaint, join the City Defendants in their motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

      On April 7, 2020, plaintiff filed an Amended Complaint whereby Officer Henry was named as a defendant. (ECF No. 35) Though a summons was issued on April 20, 2020, Officer Henry was not served until February 23, 2021. (ECF No. 37, 70) This Court granted City Defendants' enlargement request in order to determine representation of Officer Henry. (ECF No. 76) In between plaintiff's Amended Complaint being filed and Officer Henry being served, City Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on behalf of the named and served City Defendants (i.e. all named parties less the Times Square Alliance and Officer Henry). (ECF No. 42, 43) For the reasons set forth below, the City Defendants respectfully request the Court's permission to allow Officer Henry to join the City Defendants' pending Motion to Dismiss.

The Amended Complaint alleges that Officer Henry wrongfully issued plaintiff a summons. City Defendants' argued in their Motion to Dismiss that the plaintiff's claims for false arrest fail as they pertained to the individual defendant officers that issued plaintiff summonses on various dates as a "pre arraignment, non-felony summons requiring no more than a later court appearance…" does not constitute a seizure under the Fourth Amendment. See Burg v. Gosselin, 591 F.3d 95, 101 (2d Cir. 2010); City Defendants' Motion to Dismiss Pg. 23. Furthermore, City Defendants argued that plaintiff's claim for malicious prosecution as it pertains to the issuance of the summonses fails as a pre-arraignment summons does not constitute a seizure when evaluating such a claim. See Wang v. City of New York, 05 Civ. 4679 (AKH), 2008 WL 2600663, at *4 (S.D.N.Y. June 26, 2008). As the sole claims against Officer Henry pertain to his actions with respect to issuing a summons to plaintiff, the same arguments that City Defendants have put forth in their Motion to Dismiss also apply for Officer Henry.

In light of the above, the City Defendants respectfully request that this Court allow Officer Henry to join the City Defendants' Motion to Dismiss in lieu of filing an answer to plaintiff's Amended Complaint.

Thank you for your consideration.

Respectfully submitted,

/s/ *[signature]*

Stephen M. Suhovsky, Esq.

To:
Alan D. Levine (via ECF)

CERTIFIED AS A TRUE COPY ON

THIS DATE 3/25/2021

BY *[signature]*
( ) Clerk
( ) Deputy

JOHN A. RICCIULI

- 2 -

# ALAN D. LEVINE

ATTORNEY AT LAW
80-02 KEW GARDENS ROAD
KEW GARDENS, NEW YORK 11415

ALAN D. LEVINE
SUSANNE RAMKISHUN

(718) 793-6363
FAX: (718) 261-0317
E-MAIL: alandlaw@justice.com

March 22, 2021

**VIA ECF**
Honorable Jesse M. Furman
United States District Judge
40 Centre Street
New York, New York 10007

Re: <u>Grytsyk v. Morales, et al.</u>
19 CV 3470 (JMF)

Dear Judge Furman:

I am the attorney for the plaintiff in the above-referenced action. I write to inform the court that plaintiff has no objection to the court's order, dated March 22, 2021, deeming the City defendants to have added defendant Sean Henry as a party to their motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff reiterates his position that defendants' Rule 12 (b)(6) motion should be denied in its entirety.

Very truly yours,

ALAN D. LEVINE, ESQ.

ADL/sr
cc: Stephen M. Suhovsky, Esq.

CERTIFIED AS A TRUE COPY ON

THIS DATE 3/25/2021

BY
( ) Clerk
(—) Deputy

John A. Riccioli

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                            :
PETRO GRYTSYK,                              :
                                            :
                    Plaintiff,              :
                                            :        19-CV-3470 (JMF)
         -v-                                :
                                            :        OPINION AND ORDER
P.O. ANTHONY MORALES, *Shield No. 5056*, et al.,  :
                                            :
                    Defendants.             :
                                            :
-----------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

　　　Plaintiff Petro Grytsyk, an artist who has long sold his work on a Manhattan sidewalk,

brings claims pursuant to 42 U.S.C. § 1983 against the City of New York (the "City") and

nineteen officers (the "Individual Defendants") from the New York City Police Department

("NYPD"), arising from an arrest in April 2016 and from nearly thirty summonses he received in

the months and years thereafter relating to his street vending.[1]  Defendants now move, pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of Grytsyk's claims.  ECF

No. 41.  For the reasons that follow, the motion is granted in part and denied in part.

---

[1]　　The Individual Defendants are Officer Anthony Morales, Lieutenant Sujat Khan,
Sergeant Matthew Bergen, Sergeant Jeffrey Murphy, Sergeant Douglas Schack, Officer
Christopher Tansey, Officer Christopher Williams, Captain O'Hara, Officer David Lachmenar,
Officer Juan Desalto, Officer Louis Scialabba, Sergeant Brendan McGurran, Officer Ricardo
DiCandia, Officer Mathimohman Mohandes, Officer Jose Espinal, Sergeant Vincent Forlenza,
Officer Rahman, Officer Gao, and Officer Henry.

## BACKGROUND

The following relevant facts, drawn from the operative amended complaint (the "Complaint"), *see* ECF No. 35 ("Compl."), are taken as true and construed in the light most favorable to Grytsyk. *See, e.g., Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Since 2010, Grytsyk has sold artwork of his creation on the sidewalk in front of 701 Seventh Avenue, between West 47th and West 48th Streets in New York City.  Compl. ¶ 30. Grytsyk maintains — and, at least for purposes of this motion, Defendants do not dispute — that, under the applicable vending regulations, he is entitled to "display and offer his art for sale" at that location "at any time except at those times when both food and general vendors are not permitted to sell their wares." *Id.* ¶ 34; *see* ECF No. 43 ("Defs.' Mem."), at 2; ECF No. 54 ("Defs.' Reply"), at 2.  On April 18, 2016, Grytsyk and his wife were both selling artwork in front of 701 Seventh Avenue when Defendant Officer Morales issued Grytsyk's wife a summons returnable at the Criminal Court of the City of New York.  Compl. ¶ 40.  Grytsyk "pointed out to" Morales "that his wife should not have been served a Criminal Court summons but that, if she were to be issued any summons at all, it should be returnable" to the New York City Environmental Control Board ("ECB").  *Id.* ¶ 41.

"In response," Officer Morales summoned Lieutenant Khan, who "proceeded to order [Grytsyk] to close down his display." *Id.* ¶¶ 42-43.  Grytsyk "protested" Khan's order, "stating that a decision as to whether or not his display should be closed was one that had to be made to a judge." *Id.* ¶ 44.  "In response," Lieutenant Khan directed Officer Morales to arrest Grytsyk; Officer Morales did so and charged Grytsyk with both obstruction of governmental administration ("OGA") in the second degree and disorderly conduct. *Id.* ¶¶ 45-46.  In conducting the arrest, Officer Morales "handcuff[ed Grytsyk] so tightly as to aggravate a pre-

existing medical condition of [his] right hand, causing him an extremely painful injury" for which he later sought medical attention. *Id.* ¶ 47. Lieutenant Khan also directed Officer Morales and other NYPD officers to seize Grytsyk's art and displays, which the NYPD then held at the Midtown North Precinct for eleven days. *Id.* ¶¶ 48-49.

At the stationhouse following the arrest, Officer Morales issued three summonses to Grytsyk. *Id.* ¶ 52. Two alleged violations of New York City Administrative Code § 20-465, which imposes certain time, place, and manner restrictions on sidewalk vendors; and one alleged a violation of 6 R.C.N.Y. § 2-304(a), which prohibits general vendors from conducting business in a roadway where and/or when stopping, standing, or parking is prohibited or restricted. *Id.* ¶¶ 52-54; *see* N.Y.C. Admin. Code § 20-452(b) (defining a "general vendor" in this context as "[a] person who hawks, peddles, sells, leases or offers to sell or lease, at retail, goods or services . . . in a public space," with certain exceptions including "food vendors"); *id.* § 17-306(c) (defining a "food vendor" as "[a] person who hawks, peddles, sells or offers food for sale at retail in any public space"). In a box on the summonses labeled "Date of Offense," Officer Morales handwrote "4/18/16"; and in a box labeled "Time," he handwrote 1:15 p.m. ECF No. 42-1, at 2-3. An ECB hearing officer dismissed all three of these summonses eight days later, on April 26, 2016. Compl. ¶ 55.

Grytsyk contends that the April 18, 2016 arrest "was a watershed moment" marking the launch of a "campaign of harassment against him that did not pause until 2018." *Id.* ¶ 56. More specifically, he alleges that, between May 3, 2016 and October 14, 2018, NYPD officers issued him a total of twenty-five summonses relating to his sales of artwork. *Id.* ¶¶ 57, 62, 64-65, 70.

The first came on May 3, 2016, when Sergeant Bergen physically assaulted, insulted, and threatened Grytsyk, and then ordered Officer Tansey to issue him a summons. *Id.* ¶ 57. The

summons alleged a violation of New York City Administrative Code § 20-465.1 and was dismissed at a hearing before the ECB on June 1, 2016 (after which the ECB issued a written opinion holding that a vendor of artwork could conduct his business at any time except when both food and general vending were prohibited at the location in front of 701 Seventh Avenue). *Id.* ¶¶ 57-59. Following the ECB's decision, Grytsyk told Sergeant Bergen that the summonses the NYPD was issuing him were improper and were being dismissed, to which Sergeant Bergen replied that "he could issue summonses to [Grytsyk] every day and that he did not care what a judge had to say about it." *Id.* ¶¶ 60-61.

Next, on June 18, 2016, Defendant Officer Williams issued Grytsyk a Criminal Court summons alleging another violation of Administrative Code § 20-465.1; this summons was also dismissed, on September 7, 2016, when Officer Williams failed to appear in court. *Id.* ¶¶ 62-63. And on February 11, 2017, Captain O'Hara and Sergeant Bergen ordered Officer Scialabba to issue Grytsyk a summons, which he did. This summons was subsequently dismissed as well — as was another summons issued (by whom the Complaint does not say) to Grytsyk on July 21, 2017. *Id.* ¶¶ 64-65. In the meantime, on December 5, 2016, the criminal charges that had been filed against Grytsyk stemming from the April 18, 2016 arrest were dismissed and sealed on motion by the New York County District Attorney. *Id.* ¶ 50. The Certificate of Disposition (of which the Court can take judicial notice, *see McBeth v. Porges*, 171 F. Supp. 3d 216, 221 (S.D.N.Y. 2016)) indicates that the charges were dismissed pursuant to "speedy trial provisions." ECF No. 42-2 (capitalization altered).

Grytsyk alleges that, following the dismissal of the July 21, 2017 summons, "there was a hiatus in the pattern of harassment that [he] had been subjected to." Compl. ¶¶ 66-67. It came to an end in the summer of 2018. Between June 1, 2018 and October 14, 2018, in a "campaign of

harassment" that "exceeded anything that had gone before," Grytsyk was served with twenty-one additional summonses for violations of the New York City Administrative Code by some combination of the following Defendants: Sergeant McGurran, Officer Lachmenar, Sergeant Murphy, Lieutenant Khan, Officer DiCandia, Sergeant Schack, Officer Desalto, Officer Mohandes, Officer Espinal, Sergeant Forlenza, Officer Rahman, and Officer Gao. *Id.* ¶¶ 68-70. Each of these summonses was returnable at the New York City Office of Administrative Trials and Hearings ("OATH"); each was eventually dismissed. *Id.* ¶ 71.

Officer Lachmenar issued one of these twenty-one summonses, for a violation of Section 20-465.1 of the Administrative Code, to Grytsyk on August 14, 2018. *Id.* ¶ 70. That same day, Lieutenant Khan, Officer Lachmenar, Officer Mohandes, and Sergeant Murphy also "seized" Grytsyk's display of artwork, "left it out in the rain so as to permanently damage it, and confiscated it." *Id.* ¶ 74. Four days later, Grytsyk unsuccessfully attempted to retrieve the confiscated artwork, but Sergeant Murphy told him that the Times Square District Management Association, Inc. ("Times Square Alliance") — a nonprofit organization, the board of which is composed of Times Square-area business owners, a neighborhood resident, labor union representatives, representatives from a non-profit organization, and various government officials — and "at least two Times Square area retail establishments did not want [Grytsyk] vending his artwork on the sidewalk." *Id.* ¶¶ 79, 95, 98. On August 24, 2018, Grytsyk received "written authorization" from the City "that entitled him to retrieve" the artwork. *Id.* ¶ 75. But Grytsyk has not retrieved the confiscated artwork to date, as "he refuses to execute a release for it until he is permitted to assess the damage that was done to it." *Id.* ¶¶ 76-77.

Following the October 14, 2018 summons, unnamed NYPD officers issued to Grytsyk another three summonses, all returnable at OATH; but these were never filed with OATH by the

issuing police officers. *Id.* ¶ 72. Finally, after another hiatus, Officer Henry issued Grytsyk another summons on January 8, 2020 for violating Section 20-465.1; this summons was also dismissed at a January 27, 2020 hearing before OATH. *Id.* ¶ 80.

Grytsyk filed this lawsuit on April 18, 2019, initially naming the City and all Individual Defendants other than Officer Henry. *See* ECF No. 1. Grytsyk filed the operative, amended Complaint on April 7, 2020, adding Officer Henry and Times Square Alliance as Defendants. Compl. The City and the eighteen initially named Individual Defendants moved to dismiss the Complaint on May 5, 2020. ECF No. 41. Earlier today, Henry joined their motion. ECF No. 80. Times Square Alliance moved to dismiss the Complaint on February 5, 2021, *see* ECF No. 71, but Grytsyk subsequently voluntarily dismissed his claims against Times Square Alliance without prejudice, thereby mooting that motion, ECF No. 78.

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Grytsyk's favor. *See, e.g., Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.

6

If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## DISCUSSION

Grytsyk brings, and Defendants move to dismiss, a veritable smorgasbord of Section 1983 claims, namely for: false arrest, malicious prosecution, excessive force, deprivation of property, and malicious abuse of process. Because the first four claims all arise, wholly or in part, from the events of April 18, 2016, the Court will begin with them. The Court will then turn to Grytsyk's malicious abuse of process claim, which is based on events from June through October 2018. Finally, the Court addresses Grytsyk's municipal liability claim.

### A. False Arrest

The Court begins with Grytsyk's false arrest claim. To state a Section 1983 false arrest claim, a plaintiff must allege "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (internal quotation marks omitted); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law."). Thus, a plaintiff may not bring a false arrest claim if there was probable cause to arrest him for an offense. *See, e.g., Betts v. Shearman*, 751 F.3d 78, 81 (2d Cir. 2014). Probable cause to arrest exists if an arresting officer has actual "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. A court must consider the "totality of the circumstances" in evaluating whether the "facts available to the officer at the time of the arrest"

meet that threshold. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (internal quotation marks omitted). Significantly, it is enough to defeat a claim that probable cause existed for *some* offense; that is, it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.); *accord Figueroa v. Mazza*, 825 F.3d 89, 99-100 (2d Cir. 2016).

Defendants, however, can prevail on Grytsyk's false arrest claim even in the absence of actual probable cause. That is because a law enforcement officer is entitled to qualified immunity if only "arguable probable cause" existed — that is, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotation marks omitted); *see Kass v. City of New York*, 864 F.3d 200, 205-07 (2d Cir. 2017) (holding that the defendant officers were entitled to qualified immunity because there was arguable probable cause, without reaching the question of whether there was actual probable cause). Specifically, the doctrine of qualified immunity provides a complete defense where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, *or* (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (emphasis added); *accord Kass*, 864 F.3d at 206 ("The qualified immunity defense . . . is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013))). Significantly, however, "in the Rule 12(b)(6) context, the facts supporting the defense of qualified immunity must appear on the face of the complaint; even then, a motion to dismiss

may be granted on qualified immunity grounds only if the plaintiff fails to plausibly allege a

claim for relief." *Sullivan v. City of New York*, No. 14-CV-1334 (JMF), 2015 WL 5025296, at

*8 (S.D.N.Y. Aug. 25, 2015) (citing cases); *accord Lumpkin v. Brehm*, 230 F. Supp. 3d 178,

183-84 (S.D.N.Y. 2017).

In this case, Defendants argue that Grytsyk's false arrest claim should be dismissed

because there was probable cause or arguable probable cause to arrest him for three offenses

under New York law: OGA, disorderly conduct, and violations of sidewalk vending regulations.

*See* Defs.' Mem. 6-13; Defs.' Reply 1-5. The Court will address each offense in turn.

### 1. OGA

Under New York law, "OGA has four elements: '(1) prevention or attempt to prevent (2)

a public servant from performing (3) an official function (4) by means of intimidation, force or

interference.'" *Antic v. City of New York*, 740 F. App'x 203, 206 (2d Cir. 2018) (summary

order) (quoting *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010)); *see* N.Y. Penal

Law § 195.05. "With respect to the fourth element, actionable 'interference can consist of

inappropriate and disruptive conduct at the scene of the performance of an official function even

if there is no physical force involved.'" *Id.* (quoting *Kass*, 864 F.3d at 209-10). Some courts in

this Circuit have interpreted the element broadly, observing that "merely approaching the police,

or speaking during the course of a police action, or disregarding police instructions, will support

a conviction." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011). *But

cf. Hilderbrandt v. City of New York*, No. 13-CV-1955 (ARR) (VVP), 2014 WL 4536736, at *6

(E.D.N.Y. Sept. 11, 2014) (stating that "[t]he quoted portion of *Rasmussen* is pure dicta" and

"unsupported by the three cases it cites"). At the same time, the fourth element is not without

substance. For example, "the interference must at least in part be 'physical' and cannot consist

9

solely of verbal statements." *Kass*, 864 F.3d at 209 (citing *People v. Case*, 42 N.Y.2d 98, 101-02 (1977)); *accord Uzoukwu v. City of New York*, 805 F.3d 409, 414-15 (2d Cir. 2015) ("[P]urely verbal interference may not satisfy the physical component under Penal Law § 195.05." (internal quotation marks omitted)).

Applying these standards here, the Court cannot conclude at this stage of the litigation that there was either probable cause or arguable probable cause to arrest Grytsyk for OGA. Defendants argue that Grytsyk "interfered in the issuance of a summons to his wife, and refused to comply with orders from defendants Morales and Khan to close down his display." Defs.' Mem. 9. With respect to the former, however, the Complaint alleges only that Grytsyk's wife, who was "a vendor of artworks at the same location . . . , was issued a summons" by Officer Morales and that Grytsyk then "pointed out" to Officer Morales that "his wife should not have been served a Criminal Court summons but that, if she were to be issued any summons at all, it should be returnable at the ECB." Compl. ¶¶ 40-41. Assuming the truth of these allegations and considering them in the light most favorable to Grytsyk, as the Court must, this alleged "interference" therefore consisted "solely of verbal statements." *Kass*, 864 F.3d at 209. Yet, "[w]ords alone, even abusive ones, cannot give rise to probable cause to arrest for obstructing governmental administration as a matter of law." *Fana v. City of New York*, No. 15-CV-8114 (PGG), 2018 WL 1581680, at *8 (S.D.N.Y. Mar. 27, 2018) (internal quotation marks omitted); *see Kass*, 864 F.3d at 209; *see also Scott v. City of New York*, No. 16-CV-834 (NGG) (ST), 2020 WL 208915, at *6 (E.D.N.Y. Jan. 14, 2020) ("Such interference 'must be . . . physical'; mere yelling is insufficient." (quoting *Basinski v. City of New York*, 706 F. App'x 693, 697 (2d Cir. 2017) (summary order))); *Hilderbrandt*, 2014 WL 4536736, at *4-5 ("Courts have made clear that the statute requires *physical* interference with police action to support an OGA arrest. . . .

"[T]he rule [is] that words alone . . . cannot give rise to probable cause to arrest for obstructing governmental administration as a matter of law." (internal quotation marks omitted)).

As for Grytsyk's alleged "refus[al] to comply with *orders* . . . to close down his display," Defs.' Mem. 9 (emphasis added), the Complaint alleges only a single order, *see* Compl. ¶ 43, and says merely that Grytsyk "protested" it, "stating that a decision as to whether or not his display should be closed was one that had to be made by a judge," *id.* ¶ 44. Although "[u]nder certain circumstances, a finding of interference may be predicated on a defendant's refusal to obey orders to leave a premises, to step back from an accident scene or to keep away from an area where a disturbance is taking place," a mere failure "to obey a police order, in and of itself, does not constitute a circumstance that gives rise to probable cause for an arrest for obstructing government administration. The failure to obey the order must create some other hazard or interference to rise to the level of obstruction necessary for obstructing government administration." *Fana*, 2018 WL 1581680, at *8 (cleaned up). Thus, for example, the fourth OGA element "may be met where an individual's refusal to obey orders evidences an attempt to interfere with officers' efforts to address a volatile situation, such as an altercation or medical emergency," or "when an individual repeatedly disobeys orders to move away from a zone of danger, thereby preventing officials from performing an official function." *Id.* (cleaned up). By contrast, the element "is not satisfied . . . where the individual's refusal to obey every command to back up is merely annoying and distracting." *Id.* (internal quotation marks omitted). Drawing all inferences in Grytsyk's favor, the Court cannot say that the allegations in the Complaint even

establish a refusal to comply with an order, let alone that such refusal rose to the level of

obstruction necessary for obstructing government administration.[2]

The cases on which Defendants rely are easily distinguished. *See Kass*, 864 F.3d at 210

(arguable probable cause where the plaintiff "refused to obey the officers' repeated orders to

move along" and, after the officer "placed his hand on [the plaintiff's] elbow to guide [the

plaintiff] away from the barricades, [the plaintiff] instructed [the officer] to 'get [the officer's]

hands off' of him and pulled away"); *Schramm v. City of New York*, No. 16-CV-553 (AKH),

2019 WL 6791462, at *6 (S.D.N.Y. Dec. 11, 2019) (probable cause where the plaintiff "was

instructed several times to step away from the scene of [her husband's] arrest" in order "to avoid

an already tense situation from escalating further" and she "refused to do so"); *Joseph v. Deluna*,

No. 15-CV-5602 (KMW), 2018 WL 1474398, at *4 (S.D.N.Y. Mar. 23, 2018) ("at a minimum,"

arguable probable cause where it was "not disputed that [the officer] told [the plaintiff] to leave

the scene by the count of three and, when [the plaintiff] failed to do so, [the officer] reached out

to arrest [the plaintiff], whereupon [the plaintiff] pulled his hand away," all "while a man and a

woman were screaming at each other [nearby], even as one was in handcuffs and both were

surrounded by police officers" (internal quotation marks omitted)); *Garcia v. County of*

*Westchester*, No. 11-CV-7258 (KMK), 2017 WL 6375791, at *16-17 (S.D.N.Y. Dec. 12, 2017)

(arguable probable cause where the plaintiff, "at the scene of a shooting, where a vehicle had

---

[2]    In addition, New York courts have held that, for purposes of OGA, "the official function
being performed must be one that was 'authorized by law.'" *Gogol v. City of New York*, No. 15-
CV-5703 (ER), 2017 WL 3449352, at *4 (S.D.N.Y. Aug. 10, 2017) (quoting *Lennon v. Miller*,
66 F.3d 416, 424 (2d Cir. 1995)). Grytsyk, of course, alleges that the officers' actions on April
18, 2016, were not lawful. *See* Compl. ¶¶ 30-51. Whether that was the case or not turns on facts
beyond the Complaint. *See, e.g., Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 157
(S.D.N.Y. 2006) (on a motion to dismiss, rejecting an argument that there was arguable probable
cause to arrest for OGA because, "assuming the facts alleged in the Complaint, the police were
not engaged in lawful conduct").

struck an officer and two individuals had been shot," approached the "area in which officers were confronting [the suspect] and effecting an arrest"); *Basinski v. City of New York*, 192 F. Supp. 3d 360, 366 (S.D.N.Y. 2016) (probable cause where the plaintiff was "taller than" the officer, and, in a "way that [wa]s physically imposing, . . . repeatedly slid his hand into his pants pocket during the course of the interaction, . . . kept his arm elevated in order to hold his phone at face level, within striking distance of the officer[,] . . . was vociferously argumentative with [the officer], interjected into interactions with third parties in a seemingly provocative manner, and drew [the officer's] attention away from the summons-related interaction with the vendor"), *aff'd*, 706 F. App'x 693; *Esmont v. City of New York*, 371 F. Supp. 2d 202, 211 (E.D.N.Y. 2005) (probable cause where the plaintiff "refused to move from her driveway to permit New York Department of Health employees to enter her yard to perform a [lawful] compliance inspection").

Moreover, *none* of these cases was decided on a Rule 12(b)(6) motion. Indeed, with one exception, all of them were decided on summary judgment and involved a careful parsing of the evidence to assess whether the plaintiff's alleged interference rose to the level of obstruction. The one exception is *Kass*, in which the Second Circuit held that the district court had erred in denying a motion for judgment on the pleadings based on qualified immunity. *See* 864 F.3d at 203. But even in *Kass*, the court was not limited to the allegations in the complaint, as the Court is here. Instead, the record in *Kass* included "a video that the parties concede[d was] authentic and accurate" and, thus, the court "view[ed] the allegations in the complaint as true *only to the extent that they [we]re not contradicted by video evidence.*" *Id.* at 206 (emphasis added) (internal quotation marks omitted). And, of course, the "interference" in *Kass* was "at least in part . . . physical" and did not "consist solely of verbal statements." *Id.* at 209 (internal quotation marks omitted); *see id.* at 210 ("Kass *physically* interfered with the officers' efforts to confine

the protest to the park and keep the sidewalk clear for pedestrians." (emphasis added)); *id.* ("A reasonable officer could conclude under these circumstances that Kass had *physically* [gotten] in the way of and had frustrated the officers' efforts to contain the protest and prevent sidewalk congestion." (emphasis added) (internal quotation marks omitted)). Drawing all inferences in Grytsyk's favor, the Court cannot say the same here. And it certainly cannot say that "the facts supporting the defense of qualified immunity . . . appear on the face of the complaint." *Sullivan*, 2015 WL 5025296, at \*8.

### 2. Disorderly Conduct

Defendants' second argument — that there was probable cause (or arguable probable cause) to arrest Grytsyk for disorderly conduct — is more easily rejected. For starters, Defendants fail to develop this argument sufficiently. In their opening memorandum of law, Defendants merely recite the elements of the crime in a single sentence, Defs.' Mem. 7, and then assert in conclusory fashion that Grytsyk committed it, *id.* at 9, 16. And while they do devote more ink to the crime in their reply, their argument is ultimately that there was probable cause to arrest Grytsyk for a *different* crime — namely, violation of vending-related regulations. *See* Defs.' Reply 4. Accordingly, for purposes of this motion, Defendants have forfeited any argument that there was probable cause (or arguable probable cause) to arrest Grytsyk for the offense of disorderly conduct. *See, e.g., Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . . ."); *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at \*1 (S.D.N.Y. Nov. 20, 2014) ("[A] "single, conclusory, one-sentence argument" is

insufficient to raise an issue in the first instance." (quoting *Cuoco v. Moriisugo*, 222 F.3d 99, 112 n.4 (2d Cir. 2000))).

In any event, on this record, the Court cannot conclude there was even arguable probable cause to arrest Grytsyk for disorderly conduct. "To prove the crime of disorderly conduct under N.Y. Pen. L. § 240.20 the prosecution must establish three elements: (i) the defendant's conduct must be public in nature, (ii) it must be done with intent to cause public inconvenience, annoyance or alarm or with recklessness as to a risk thereof, and (iii) it must match at least one of the descriptions set forth in the statute." *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001) (footnote and internal quotation marks omitted). With respect to Section 240.20(5), the only provision of the statute that Defendants cite here, Defs.' Mem. 7, "[t]he Second Circuit requires a showing that the putative offender was 'actually and immediately blocking' the pedestrian or vehicular traffic in question." *Case v. City of New York*, 408 F. Supp. 3d 313, 320 (S.D.N.Y. 2019) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 372 (2d Cir. 2007)); *accord Sherrard v. Redmond*, No. 15-CV-7318 (MAB) (KNF), 2018 WL 11213053, at *4 (S.D.N.Y. Mar. 5, 2018). Moreover, "New York courts have interpreted this statute to permit punishment only where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic." *Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006) (Sotomayor, J.). The Complaint contains no allegations whatsoever about the state of pedestrian or vehicular traffic flow on April 18, 2016; Grytsyk's position in relation to any traffic flow and whether it interfered; or whether anyone else was even in the vicinity. It follows that, construing these allegations in the light most favorable to Grytsyk, there is no basis for the Court to find even arguable probable cause for a disorderly conduct arrest pursuant to Section 240.20(5).

### 3. Vending Regulations

Finally, Defendants argue that even if probable cause did not exist for OGA or disorderly conduct (the offenses for which Grytsyk was actually arrested on April 18, 2016), it nevertheless existed for violations of New York City vending regulations — namely, N.Y.C. Administrative Code §§ 17-314, 20-452 to 20-474.3 and 6 R.C.N.Y. § 2-314, which impose time, place, and manner restrictions on sidewalk general and food vendors. *See* Defs.' Mem. 10-13; Defs.' Reply 1-5. Grytsyk appears to concede that he is subject to these regulations. *See* ECF No. 48 ("Pl.'s Opp'n"), at 3-4; *cf. Bery v. City of New York*, 97 F.3d 689, 697-98 (2d Cir. 1996) (finding the City's licensing requirements for sidewalk art vendors "too sweeping to pass constitutional muster" but stating that such vendors may be properly subjected to appropriate time, place, and manner restrictions). More significantly, Defendants explicitly concede, at least for the purposes of this motion, that Grytsyk is "only . . . restricted from vending when *both* food and general vending are prohibited." Defs.' Reply 2 (emphasis added); *accord* Defs.' Mem. 2, 13. On Defendants' own account of the interlocking regulatory provisions, that is the case at the relevant location Monday through Saturday between the hours of 12:00 p.m. and 11:00 p.m. *See* Defs.' Mem. 13. Pointing to the fact that Officer Morales wrote 1:15 p.m. on the summonses that he issued to Grytsyk on April 18, 2016, *see* ECF No. 42-1, at 2-3, Defendants contend that the "proof" is "irrefutable" that when Grytsyk was arrested "both food and general vending were prohibited." Defs.' Reply 2.

Putting aside the question of whether the Court can rely for the truth on Officer Morales's handwritten notations on the summonses at this stage of the litigation, Defendants' "proof" may not, in fact, be "irrefutable." The relevant box on the summonses did not call for the "time of the offense"; it merely called for the "time." Thus, it is not clear on the current record whether

Officer Morales listed the time of the alleged offense or the time at which he completed the

summonses. If it was the latter, the summonses themselves — even taken as true — are far from

"irrefutable" proof that Grytsyk was vending after 12 p.m. After all, the Complaint alleges only

that Officer Morales issued the summonses "[a]t the stationhouse, following [Grytsyk's] arrest"

(and perhaps after the seizure of Grytsyk's art and displays as well). Compl. ¶¶ 48, 52. Neither

the Complaint nor any material that the Court may consider at this stage reveals how much time

elapsed between Grytsyk's arrest and the issuance of the summonses. It follows that whether

there was probable cause (or arguable probable cause) to arrest Grytsyk for violation of the

vending regulations requires development of the facts and cannot be decided at this stage.

### 4. Conclusion

In sum, given the limited materials that can be considered at this stage of the case and

drawing all inferences in Grytsyk's favor, the Court cannot conclude that there was even

arguable probable cause to arrest Grytsyk for OGA, disorderly conduct, or violations of the

City's vending regulations. Accordingly, the Court is compelled to deny Defendants' motion to

dismiss Grytsyk's false arrest claim. Needless to say, however, "Defendants are at liberty to

raise" these arguments "anew, after discovery, if the facts adduced" support a finding of probable

cause or arguable probable cause. *Nelson v. City of New York*, No. 18-CV-4636 (PAE), 2019

WL 3779420, at *14 (S.D.N.Y. Aug. 9, 2019).

## B. Malicious Prosecution

Grytsyk also brings a Section 1983 malicious prosecution claim based on the charges of

OGA and disorderly conduct that were filed, and later dismissed, in connection with his April 18,

2016 arrest. "In order to prevail on a § 1983 claim against a state actor for malicious

prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and

must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). Thus, Grytsyk must plead (1) the initiation or continuation of a criminal proceeding against him; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; (4) actual malice as a motivation for Defendants' actions; and (5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights. *McKay v. City of New York*, 32 F. Supp. 3d 499, 511 (S.D.N.Y. 2014); *accord Nelson*, 2019 WL 3779420, at *10. Defendants argue that he fails to plead the lack of probable cause (or that they are entitled to qualified immunity based on arguable probable cause), *see* Defs.' Mem. 16; Defs.' Reply 10 — an argument that the Court has already considered and rejected.[3] Alternatively, they argue that the claim fails because the dismissal of Grytsyk's charges for speedy trial reasons cannot qualify as favorable termination for purposes of malicious prosecution. *See* Defs.' Mem. 16; Defs.' Reply 10-11.

Defendants' argument is foreclosed by binding Second Circuit precedent. *See Murphy v. Lynn*, 118 F.3d 938, 950 (2d Cir. 1997) ("[D]ismissals for lack of timely prosecution should generally be considered, for purposes of a claim of malicious prosecution, a termination favorable to the accused."). To be sure, the Second Circuit's decision in *Murphy* notwithstanding, Defendants' argument has been accepted by a host of district judges following *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018), in which the Court held that, to prevail on a malicious prosecution claim under federal law, a plaintiff must show "that the

---

[3]     Nevertheless, one additional note is warranted. Defendants argue that the malicious prosecution claim should be dismissed because there was probable cause (or arguable probable cause) to believe that Grytsyk violated "vending rules." Defs.' Mem. 16. That is incorrect, as Grytsyk was not actually charged with a violation of any such rule. *See, e.g., Tompkins v. City of New York*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) ("[W]hile a false arrest claim fails if there was probable cause to arrest the plaintiff for *any* offense, in the malicious prosecution context, there must be probable cause for the offenses *charged*." (citation omitted)).

underlying criminal proceeding ended in a manner that affirmatively indicates his innocence."
*See* Defs.' Reply 10-11 (citing cases). And these district judges have admittedly offered some
persuasive reasons to question whether *Murphy* can be squared with *Lanning*. *See, e.g., Minus v.
City of New York*, — F. Supp. 3d —, No. 17-CV-4827 (VSB), 2020 WL 5646149, at *5-8
(S.D.N.Y. Sept. 22, 2020). In the Court's view, however, these district judges have gotten too
far out over their proverbial skis. It is well established that a district court must follow a
precedential opinion of the Second Circuit "unless and until it is overruled . . . by the Second
Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will
almost inevitably be overruled by the Second Circuit." *United States v. Diaz*, 122 F. Supp. 3d
165, 179 (S.D.N.Y. 2015) (internal quotation marks omitted), *aff'd*, 854 F.3d 197 (2d Cir. 2017).
Thus, "the precise question for this Court is not whether, by its own analysis," *Lanning* supports
Defendants' argument, but rather whether *Lanning* "conclusively supports that finding that the
Second Circuit or the Supreme Court is all but certain to overrule" *Murphy*. *Id.* (cleaned up).

It does not. First and foremost, the *Lanning* Court itself cited *Murphy* favorably. *See* 908
F.3d at 27 n.6. Second, since *Lanning*, the Second Circuit has four times cited *Murphy* as good
law (albeit for more general propositions). *See Olaizola v. Foley*, 797 F. App'x 623, 624 (2d Cir.
2020) (summary order); *Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 22-23 (2d Cir. 2019)
(summary order); *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019); *Black v.
Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) (summary order). And third, a host of other
district judges have adhered to *Murphy* even after *Lanning*. *See, e.g., Alvarez v. Peters*, No. 19-
CV-6789 (EK), 2020 WL 1808901, at *1 n.5 (E.D.N.Y. Apr. 9, 2020); *Nelson*, 2019 WL
3779420, at *11-12; *Blount v. City of New York*, No. 15-CV-5599 (PKC) (JO), 2019 WL
1050994, at *4-5 (E.D.N.Y. Mar. 5, 2019). Judge Engelmayer's thoughtful and cogent analysis

in *Nelson* is particularly noteworthy. The ultimate point, of course, is not that *Murphy* is rightly decided or long for this world; it may not be either. Instead, it is that the Second Circuit, not this Court or any other district court, gets to decide that question. And in light of the Second Circuit's own citations to *Murphy*, in *Lanning* and since, not to mention the analyses of Judge Engelmayer and others, the Court certainly cannot say that *Lanning* renders the holding of *Murphy* "untenable." *United States v. Emmenegger*, 329 F. Supp. 2d 416, 436 (S.D.N.Y. 2004) (Lynch, J.).

In short, Defendants' argument — that Grytsyk cannot, as a categorical matter, establish favorable termination for purposes of his Section 1983 malicious prosecution claim because the dismissal of his charges was on speedy trial grounds — remains foreclosed by Second Circuit precedent.[4] Of course, "[i]n the event that ensuing case law on this point is adverse to this conclusion, the Court will stand ready, at the summary judgment stage, to reconsider this assessment." *Nelson*, 2019 WL 3779420, at *12.

## C. Excessive Force

Next, Grytsyk brings a claim of excessive force against Officer Morales based on his handcuffing during his April 18, 2016 arrest. "The question" in assessing whether a police officer has used excessive force in handcuffing a plaintiff is "whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff

---

[4]    An argument could be made that, even under *Murphy*, a plaintiff must affirmatively plead that the termination of his prosecution "is indicative of innocence," 118 F.3d at 948, and that Grytsyk fails to do so. But Defendants do not make this more nuanced argument; they merely contend that, post-*Lanning*, a speedy trial dismissal does not qualify as a favorable termination as a categorical matter. Accordingly, they have forfeited any such argument.

signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Id.* "In analyzing excessive force claims arising out of the use of handcuffs, courts in this circuit frequently consider (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Gonzalez v. Hirschman*, No. 15-CV-810 (GHW), 2016 WL 354913, at *4 (S.D.N.Y. Jan. 28, 2016) (internal quotation marks omitted). "It is well established in this Circuit that claims of excessive force are not established by allegations that overly tight handcuffs caused minor, temporary injuries." *Sullivan v. City of New York*, No. 17-CV-3779 (KPF), 2018 WL 3368706, at *10 (S.D.N.Y. July 10, 2018) (internal quotation marks and alterations omitted). At the same time, "[a] court's reasonableness analysis is not limited to a factual checklist; it must instead be guided by a 'careful balanc[e]' between the 'nature and quality of the intrusion' and the 'countervailing government[al] interests at stake' under the circumstances." *Cugini*, 941 F.3d at 613 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Measured against these standards, Grytsyk's excessive force claim falls short. The Complaint alleges only that Morales handcuffed Grytsyk "so tightly as to aggravate a pre-existing medical condition of [his] right hand, causing him an extremely painful injury and requiring him to seek medical attention." Compl. ¶ 47. But there is no allegation that Grytsyk advised the officers of his discomfort, verbally or otherwise, or that he remained handcuffed for an extended period. Moreover, threadbare and conclusory allegations of injury, without reference to specific physical injuries, do not suffice as a matter of law. *See, e.g.*, *Hays v. City of New York*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *5 (S.D.N.Y. Feb. 28, 2017) (collecting cases); *Livigni v. Ortega*, No. 15-CV-9454 (CM), 2016 WL 6143351, at *4 (S.D.N.Y.

Oct. 19, 2016) (dismissing excessive force claim where the plaintiff merely "allege[d] that his handcuffs were unreasonably tight, and that as a result he suffered a loss of circulation and that his wrists are chronically debilitated" but "d[id] not provide any more information about the extent of his alleged injuries, nor d[id] he allege that [the] [d]efendants ignored a request to loosen the handcuffs" (internal quotation marks omitted)).  Accordingly, Grytsyk's excessive force claim must be and is dismissed.

## D.  Unreasonable Deprivation of Property

Grytsyk also brings a claim for deprivation of property without due process based on the confiscation of his art on April 18, 2016, and August 14, 2018. *See* Compl. ¶¶ 48, 74, 81.  (The property confiscated in 2016 was returned to Grytsyk after eleven days; the property taken in 2018 apparently remains in police custody despite Grytsyk's having obtained written authorization to retrieve it within ten days of the confiscation due to his unwillingness to execute a release. *See id.* ¶¶ 49, 75-76.)  The Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  But "the availability of post-deprivation remedies does not defeat a § 1983 claim where the alleged loss results from adherence to an established state or municipal policy." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999).  "In addition, even when not sanctioned by an established state procedure, a deprivation performed by a 'high-ranking official' with 'final authority over significant matters' will not be considered random and unauthorized." *Baines v. City of New York*, No. 10-CV-9545 (JMF), 2015 WL 3555758, at *10 (S.D.N.Y. June 8, 2015) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)).

In light of these standards, Grytsyk's claims fail as a matter of law. He "has not alleged the deprivation of his property was the result of an established state procedure," as opposed to "a 'random and unauthorized' act by" Defendants. *Dove v. City of New York*, No. 99-CV-3020 (DC), 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000) (Chin, J.). Indeed, Grytsyk "fails to allege any facts suggesting the existence of a policy, custom, or practice that directly resulted in the deprivation of property he claims to have endured." *Kneitel v. Rose*, No. 19-CV-3742 (PKC) (LB), 2019 WL 3804678, at *3 (E.D.N.Y. Aug. 13, 2019); *see also Baines*, 2015 WL 3555758, at *10 ("Plaintiff fails to identify an established policy pursuant to which the alleged deprivation took place."). Nor is there any suggestion that any Defendant "is a high-ranking official with final authority over significant matters." *Baines*, 2015 WL 3555758, at *10 (internal quotation marks omitted). Thus, "the alleged deprivation of Plaintiff's property was, as a matter of law, random and unauthorized." *Id.* (internal quotation marks omitted). And "[w]here loss of property was random and unauthorized, courts have found that New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion." *Pierre v. City of New York*, No. 12-CV-9462 (LAK) (GWG), 2014 WL 56923, at *10 (S.D.N.Y. Jan. 7, 2014) (internal quotation marks omitted); *see also, e.g., Baines*, 2015 WL 3555758, at *10; *Dove*, 2000 WL 342682, at *3. It follows that Grytsyk fails to state a claim for unreasonable deprivation of property.

### E. Malicious Abuse of Process

Next, Grytsyk brings a claim for malicious abuse of process based on the twenty-one summonses that were issued to him between June 1, 2018, and October 12, 2018. *See* Pl.'s Opp'n 15; *see also* Compl. ¶¶ 68-71. A malicious abuse of process claim "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance

of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). "The crux of a malicious abuse of process claim is the collateral objective element. To meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010) (Chin, J.), *aff'd*, 441 F. App'x 24 (2d Cir. 2011) (summary order).

Defendants offer only two arguments in support of their motion to dismiss this claim. First, they "object" on the ground that the "claim . . . was not explicitly pled in [Grytsyk's] Amended Complaint." Defs.' Reply 9. That objection is without merit. Although Grytsyk could certainly have alleged the claim more explicitly, the Complaint states that Defendants "intentionally and *maliciously* harmed [his] business through a pattern of unremitting legal harassment that consisted of *abusing legal process* by repeatedly issuing summonses for non-existent violations of the New York City Administrative Code with the intention, not of enforcing said ordinances, but of harming and interfering with [Grytsyk's] business." Compl. ¶ 81 (emphases added); *see also id.* ¶¶ 68-71. If anything, therefore, it is Defendants who forfeited any arguments with respect to the malicious abuse of process claim by failing to make them in their initial memorandum of law. *See Farmer v. United States*, No. 15-CV-6287 (AJN), 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived." (collecting cases)).[5] Second,

---

[5]     More specifically, Defendants do not make, and thus have forfeited for purposes of this motion, any argument that Grytsyk's malicious abuse of process claim fails because there was probable cause, *see, e.g., Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015) ("There has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law."); *Allen v. Leonard*, No. 18-CV-7163 (SJF) (AKT), 2020 WL 4587752, at *8 n.8 (E.D.N.Y. Mar. 3, 2020) (acknowledging the ongoing intra-Circuit split), *report and recommendation adopted*, 2020 WL

Defendants cite *Chepilko v. City of New York*, No. 14-CV-4173 (LDH) (LB), 2016 WL

11263664 (E.D.N.Y. Nov. 28, 2016), *report and recommendation adopted in part, rejected in

part*, 2017 WL 1214455 (E.D.N.Y. Mar. 31, 2017), in which the court dismissed Section 1983

claims brought by a "serial illegal [art] vendor." Defs.' Reply 9. But the plaintiff in *Chepilko*

did not even allege malicious abuse of process, so Defendants' bare citation to the case, without

more, plainly does not justify dismissal.

      Although not raised by Defendants, one additional point warrants discussion. The

Complaint is not particularly clear about which claims are being asserted against which

Defendants based on which factual allegations; instead, it asserts all of Grytsyk's Section 1983

claims against all of the Individual Defendants in a single count. *See* Compl. ¶¶ 29-84.

Grytsyk's false arrest, malicious prosecution, excessive force, and deprivation of property claims

clearly arise from specific, discrete events, so one can infer the Defendants against whom these

claims are brought. By contrast, it is unclear from the face of the Complaint precisely which

events are alleged to give rise to his malicious abuse of process claim. In his memorandum of

law, however, Grytsyk clarifies that the claim is based solely on the twenty-one summonses he

was issued between June 1, 2018 and October 14, 2018. Pl.'s Opp'n 15.[6] The only Individual

_____

2537280 (E.D.N.Y. May 19, 2020); because there was no "improper use of process *after* it [was]
regularly issued," *Nelson*, 2019 WL 3779420, at *13 (internal quotation marks omitted); or
because he fails to plausibly allege an improper collateral purpose, *see, e.g., Demaitre v. City of
New York*, No. 18-CV-12403 (PGG), 2020 WL 6048192, at *5 (S.D.N.Y. Oct. 11, 2020)
(discussing "[e]xamples of the types of collateral objectives covered by the tort of malicious
abuse of process include the infliction of economic harm, extortion, blackmail, and retribution").
Thus, the Court need not and does not address any of these potential arguments.

[6]     Even without this clarification, the Court would have concluded that the Complaint
supports an abuse of process claim only with respect to these twenty-one summonses, despite the
fact that Grytsyk alleges the issuance of other summonses before and after this period. *See*
Compl. ¶¶ 52, 57, 62, 64-65, 80. By Grytsyk's own description, the "campaign of harassment"
between June and October 2018 was unlike "anything that had gone before" and was bookended

Defendants alleged to have issued summonses during this period are Sergeant McGurran, Officer

Lachmenar, Sergeant Murphy, Lieutenant Khan, Officer DiCandia, Sergeant Schack, Officer

Desalto, Officer Mohandes, Officer Espinal, Sergeant Forlenza, Officer Rahman, and Officer

Gao. Compl. ¶ 70. Thus, to the extent Grytsyk brings malicious abuse of process claims against

any other Individual Defendants, such claims must be and are deemed withdrawn or abandoned.

## F. Municipal Liability

Finally, Grytsyk seeks to hold the City liable under *Monell v. Department of Social

Services*, 436 U.S. 658 (1978). "[T]o hold a city liable under § 1983 for the unconstitutional

actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official

policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional

right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks

omitted). A plaintiff may establish the existence of an official policy or custom by showing "the

constitutional violation was caused by: '(1) a formal policy officially endorsed by the

municipality; (2) actions taken by government officials responsible for establishing the

municipal policies that caused the particular deprivation in question; (3) a practice so consistent

and widespread that, although not expressly authorized, constitutes a custom or usage of which a

supervising policy-maker must have been aware; or (4) a failure by policymakers to provide

adequate training or supervision to subordinates to such an extent that it amounts to deliberate

indifference to the rights of those who come into contact with municipal employees.'" *Nelson*,

2019 WL 3779420, at *15 (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77

(S.D.N.Y. 2010)).

---

by extended "hiatus[es]" during which Grytsyk was largely left alone. *Id.* ¶¶ 66-68, 80. Among
other things, the allegations in the Complaint do not support a plausible inference that the
summonses issued in 2016, 2017, or 2020 were motivated by an improper collateral purpose.

Applying these standards, the Court need not dwell long on Grytsyk's *Monell* claims. "First, to the extent that [Grytsyk] fails to allege an underlying constitutional violation, his . . . *Monell* claims also fail." *Nigro v. City of New York*, No. 19-CV-2369 (JMF), 2020 WL 5503539, at *5 (S.D.N.Y. Sept. 11, 2020) (citing *Lanning*, 908 F.3d at 30). Because the Court concluded above that Grytsyk's excessive force and deprivation of property claims fail, it follows that there can be no municipal liability with respect to these claims. Second, and in any event, Grytsyk's allegations of the existence of a City policy or practice are entirely conclusory. Grytsyk alleges only "[u]pon information and belief" that the NYPD is "determined to harass [F]irst [A]mendment-protected vendors" and that unnamed "superior officers . . . specifically instructed" the Individual Defendants to act accordingly. Compl. ¶¶ 87, 89. These allegations do not cut it. *See Nelson*, 2019 WL 3779420, at *16 ("[T]he [complaint] purports to plead [the existence of an official policy], but its claims are conclusory. . . . [I]t does not substantiate any of [its] broad claims. As a result, the [complaint] fails adequately to allege any of the above means of pleading any official policy or custom."); *Baines v. City of New York*, No. 10-CV-9545 (JMF), 2014 WL 1087973, at *3 (S.D.N.Y. Mar. 19, 2014) ("[A] plaintiff must allege facts — other than those giving rise to individual liability — supporting an inference that the municipality has an unconstitutional policy."). Accordingly, Grytsyk's claims against the City must be and are dismissed.

**CONCLUSION**

In sum, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the following claims survive: (1) Grytsyk's false arrest against Lieutenant Khan and Officer Morales; (2) his malicious prosecution against Lieutenant Khan and Officer Morales; and (3) his malicious abuse of process against Sergeant McGurran, Officer Lachmenar, Sergeant

Murphy, Lieutenant Khan, Officer DiCandia, Sergeant Schack, Officer Desalto, Officer Mohandes, Officer Espinal, Sergeant Forlenza, Officer Rahman, and Officer Gao.  The remaining claims are dismissed.

The Court declines to *sua sponte* grant Grytsyk leave to amend his Complaint to address the dismissed claims.  Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  The Court already granted Grytsyk leave to amend, ECF No. 34, and he has neither sought leave to amend again nor suggested that he possesses any additional facts that could cure the defects in the dismissed claims, *see, e.g.*, *Cuoco*, 222 F.3d at 112; *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading).  Moreover, the defects in at least some of the dismissed claims are substantive and, thus, cannot be cured through amendment.  *See, e.g.*, *Willard v. UP Fintech Holding Ltd.*, No. 19-CV-10326 (JMF), 2021 WL 1026571, at *9 (S.D.N.Y. Mar. 17, 2021) ("A district court may deny leave to amend where amendment would be futile." (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

The remaining Defendants shall file an answer with respect to Grytsyk's remaining claims **no later than three weeks from the date of this Opinion and Order**.  In addition, the parties shall appear for a pretrial conference on **April 22, 2021** at **4:00 p.m.**  Although the Court previously conducted an initial pretrial conference and entered a Case Management Plan, *see* ECF No. 32, the Court will treat the conference as if it were an initial conference in light of

Grytsyk's subsequent amendment of his complaint, Defendants' motion, and this ruling. To that end, the parties shall follow the pre-conference procedures specified in the Court's Order of February 24, 2020, including by submitting a joint letter addressing certain topics and a proposed case management plan no later than the Thursday prior to the conference. *See* ECF No. 27.

The Clerk of Court is directed to terminate ECF Nos. 41 and 71 and to terminate Sergeant Matthew Bergen, P.O Christopher Tansey, P.O. Christopher Williams, Captain O'Hara, P.O. Louis Scialabba, P.O. Henry, and the City of New York as Defendants.

SO ORDERED.

Dated: March 22, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge

CERTIFIED AS A TRUE COPY ON
THIS DATE 3/25/202_
BY _____
( ) Clerk
( ) Deputy
JOHN A. Ricc_

29

```
CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK                       CERTIFICATE OF DISPOSITION
                                            NUMBER:  473118
THE PEOPLE OF THE STATE OF NEW  YORK
                 VS

GRYTSYK,PETRO                                06/19/1968
Defendant                                Date of Birth

67-65 73RD PLACE                             13456367Y
Address                                  NYSID Number

QUEENS             NY  11379                 04/18/2016
City            State  Zip               Date of Arrest/Issue

Docket Number: 2016CN002464              Summons No:

195.05 240.20
Arraignment Charges
```

Case Disposition Information:

| Date | Court Action | Judge | Part |
|------|-------------|-------|------|
| 12/05/2016 | DISMISSED - MOTION OF DA | WATTERS,JOANNE | C |

NO FEE CERTIFICATION

_ GOVERNMENT AGENCY        _ COUNSEL ASSIGNED

_ NO RECORD OF ATTORNEY READILY AVAILABLE. DEFENDANT STATES COUNSEL WAS ASSIGNED

SOURCE  _ ACCUSATORY INSTRUMENT  _ DOCKET BOOK/CRIMS   _ CRC3030[CRS963]

    I HEREBY CERTIFY THAT THIS IS A TRUE EXCERPT OF THE RECORD ON FILE IN
THIS COURT.

TEIXEIRA,K _____          12/07/2016
COURT OFFICIAL SIGNATURE AND SEAL        DATE      FEE: NONE

(CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT
         SEAL OVER THE SIGNATURE OF THE COURT OFFICIAL.)

# SEALED

pursuant to Section 160.50 of the CPL

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

CERTIFICATE OF DISPOSITION
NUMBER:   605956

THE PEOPLE OF THE STATE OF NEW   YORK
                           VS

GRYTSYK, PETRO
Defendant

06/19/1968
Date of Birth

67-65 73RD PLACE
Address

13456367Y
NYSID Number

QUEENS                    NY   11379
City              State   Zip

04/18/2016
Date of Arrest/Issue

Docket Number: 2016CN002464

Summons No:

PL 195.05 00 AM,PL 240.20 05 V,
Arraignment Charges

Case Disposition Information:

| Date | Court Action | Judge | Part |
| --- | --- | --- | --- |
| 12/05/2016 | DISM - SPEEDY TRIAL PROVISIONS | WATTERS,JOANNE | C |

**SEALED**

NO FEE CERTIFICATION

**Pursuant to Section 160.50 of the CPL**

_ GOVERNMENT AGENCY      _ COUNSEL ASSIGNED

_ **NO RECORD OF ATTORNEY READILY AVAILABLE. DEFENDANT STATES COUNSEL WAS ASSIGNED**

SOURCE   _ ACCUSATORY INSTRUMENT   _ DOCKET BOOK/CRIMS   _ CRC3030[CRS963]

     I HEREBY CERTIFY THAT THIS IS A TRUE EXCERPT OF THE RECORD ON FILE IN
THIS COURT.

ENG,J
COURT OFFICIAL SIGNATURE AND SEAL

03/26/2021
DATE        FEE: NONE

Marijuana convictions under PL 221.05 or PL 221.10 are vacated, dismissed
and expunged as of August 28, 2019. The court system is in the process of
updating its records, but in the meantime, it is an unlawful discriminatory
practice unless specifically required or permitted by statute, for any
entity to make any inquiry about an expunged conviction or to use an
expunged conviction adversely, whether in any form of application or
otherwise, against such individual.

Pursuant to section 70.15 of the Penal Law, any misdemeanor sentence with
a jail term of "1 year", "12 months", or "365 days" is, by operation of
law, deemed to be a sentence of 364 days. Any Certificate of Disposition
indicating a jail sentence of "1 year", "12 months", "52 weeks", or
"365 days" for a misdmeanor conviction shall be interpreted as a sentence
of 364 days.